1  BLAKELY LAW GROUP
2  BRENT H. BLAKELY (CA Bar No. 157292)
   1334 Parkview Avenue, Suite 280
3  Manhattan Beach, California 90266
4  Telephone:   (310) 546-7400
   Facsimile:   (310) 546-7401
5  Email:       BBlakely@BlakelyLawGroup.com

6
   Attorneys for Defendant
7  MICHAEL COHEN

8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10

11 | STEPHANIE CLIFFORD (AKA         | Case No. 2:18-CV-05052-SJO-FFM
12 | STORMY DANIELS), an individual, |
                                     | **DEFENDANT MICHAEL COHEN'S**
13 |          Plaintiffs,            | **OPPOSITION TO PLAINTIFF'S**
                                     | **MOTION TO REMAND; REQUEST**
14 |          v.                     | **THAT THE CASE BE DISMISSED**
                                     | **FOR LACK OF PERSONAL**
15 |                                 | **JURISDICTION**
16 | KEITH M. DAVIDSON, an individual,
   | MICHAEL COHEN, an individual, and | Assigned for All Purposes to the
17 | DOES 1 through 10, inclusive,   | Hon. S. James Otero
18 |          Defendants.            |
19 |                                 | **Date:       July 23, 2018**
20 |                                 | **Time:       10:00 a.m.**
   |                                 | **Location:   Courtroom 10C**
21
22
23 |                                 | Action Filed:  June 7, 2018
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

III.  PLAINTIFF'S ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER MICHAEL COHEN ........................ 5

IV.   U.S.C. § 1441(b) SHOULD NOT BAR REMOVAL ................................... 7

      A.    The Standard ........................................................................ 7

      B.    The Circuit Spit ..................................................................... 7

      C.    Keith Davidson is a Sham Defendant ................................. 10

V.    THIS COURT HAS SUPPLEMENTAL SUBJECT MATTER JURISDICTION OVER THIS CASE ........................................... 15

VI.   THIS COURT SHOULD EXERCISE ITS INHERENT POWERS AND EITHER DISMISS OR STAY THIS LAWSUIT ........................................ 16

IV.   CONCLUSION ........................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrahams v. Hard Drive Productions, Inc.*,
  2012 U.S. Dist. LEXIS 75025 (N.D. Cal. May 30, 2012) ........................... 19

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) .................................................... 12

*Allen v. Eli Lilly & Co.*,
  2010 U.S. Dist. LEXIS 92089 (S.D. Cal. Sept. 2, 2010) ............................ 9

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ..................................................... 18

*Arizona v. Manypenny*,
  451 U.S. 232 (1981) ............................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................... 11, 12, 13

*Barnhart v. Sigmon Coal Co., Inc.*,
  534 U.S. 438 (2002) ......................................................... 7, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................. 11

*Benasra v. Mitchell Silberberg & Knupp LLP*
  123 Cal.App.4th 1179 (2004) ..................................................... 11

*Black v. Monster Bev. Corp.*,
  2016 U.S. Dist. LEXIS 1881 (C.D. Cal 2016) ...................................... 9

*Brown v. Pacific Life Ins. Co.*,
  462 F. 3d 384 (5th Cir. 2006) ................................................... 16

*Canton Fitzgerald, L.P. v. Yagi Euro (Hong Kong) Ltd.*,
  88 F.3d 152 (2d Cir. 1996) .................................................... 5, 6

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .............................................................. 16

*Church of Scientology v. United States Dep't of the Army*,
  611 F.2d 738 (9th Cir. 1979) .................................................... 18

*City of Chicago v. International College of Surgeons*,
    522 U.S. 156 (1997) ................................................................... 15

*Commissioner of Internal Revenue v. Brown*,
    380 U.S. 563 (1965) ..................................................................... 7

*Cooper v. McDermott Int'l, Inc.*,
    62 F.3d 395 U.S. App. LEXIS 21253 (5th Cir. July 6, 1995).................. 5, 6

*Disabled Rights Action Committee v. Las Vegas Eventss, Inc.*,
    375 F. 3d 861 (9th Cir. 2004) ....................................................... 16

*Evans v. Rare Coin Wholesalers, Inc.*,
    2010 U.S. Dist. LEXIS 13973 ........................................................ 9

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ....................................................... 12

*Grogan v O'Neil.*,
    292 F. Supp. 2d 1282 (D.C. Kan. 2003) ...................................... 16

*Haseko Homes, Inc. v. Underwriters Ins. Co.*,
    2010 U.S.Dist. LEXIS 5061 (S.D. Cal. Jan. 22, 2010) ................................ 9

*Henderson v. JPMorgan Chase Bank*,
    2011 U.S. Dist. LEXIS 103552 (C.D. Cal. 2011) ........................... 19

*International Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945) ...................................................................... 5

*Intervet, Inc. v. Merial, Ltd.*,
    535 F. Supp. 2d 112 (D.D.C. 2008) ............................................ 19

*Jiangmen Kinwai Furniture Decoration Co. v. Int'l Mkt. Ctrs., Inc.*,
    719 Fed. Appx. 556 (9th Cir. 2017) ............................................. 18

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) ................................................. 18, 19

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962) .................................................................... 16

*Lively v. Wild Oats Mkts., Inc.*,
    456 F.3d 933 (9th Cir. 2006)..................................................... 7, 10

*Mahana v. Enerplus Res. U.S.A. Corp.*,
  2012 U.S. Dist. LEXIS 75050 (D. Mont. May 30, 2012) .............................. 9

*May v. Haas*,
  2012 U.S. Dist. LEXIS 148972 (E.D. Cal. Oct. 15, 2012) ........................... 8

*Michaelson v. United States*,
  266 U.S. 42 (1924) .................................................................................. 17

*Mirabito v. Liccardo*,
  4 Cal.App.4th 41 (1992) ........................................................................... 13

*Morris v. Princess Cruises Inc.*,
  236 F. 3d 1061 (9th Cir. 2001) ................................................................ 11

*Noble v. Sears, Roebuck & Co.*
  33 Cal.App.3d 654 (1973) ......................................................................... 13

*Olin Corp. et al. v. Cont'l Cas. Co. et al*,
  2011 U.S. Dist. LEXIS 41685 (D. Nev. Apr. 6, 2011) ............................... 19

*Ott v. Consolidated Freightways Corp. of Del.*,
  213 F.Supp. 2d 662 (S.D. Miss. 2002) ...................................................... 9

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ...................................................................... 18

*Pennoyer v. Neff*,
  95 U.S. 714 (1877) ..................................................................................... 5

*Perez v. McNamee*,
  2006 U.S. Dist. LEXIS 89820 (N.D. Cal. Nov. 30, 2006) ........................... 9

*Pierce v. Lyman*
  1 Cal.App.4th 1093 (1991) ........................................................................ 11

*Planned Parenthood of Idaho, Inc. v. Wasden*,
  376 F.3d 908 (9th Cir. 2004) ..................................................................... 8

*Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*,
  881 F.Supp.2d 1123 (N.D.Cal. 2012) ........................................................ 8

*Republic Western Ins. Co. v. InternationalIns. Co.*
  765 F.Supp. 628 (N.D.Cal. 1991) .............................................................. 9

OPPOSITION TO MOTION FOR REMAND

*Ritchey v. Upjohn Drug Co.*,
    139 F. 3d 1313 (9th Cir. 1998) ...................................................... 11

*Ruhgras AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ............................................................... 3, 7

*TeleVideo Systems, Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ...................................................... 17

*Thompson's Point v Safe Harbor Dev. Corp.*,
    862 F Supp 594 (DC Me 1994) .................................................... 16

*Tosco Corp. v. Cmtys. for a Better Env't.*,
    236 F.3d 495 (9th Cir. 2001) .................................................... 7, 10

*Travis v. Irby*,
    326 F. 3d 644 (5th Cir. 2003) ..................................................... 11

*United States v. Hudson*,
    11 U.S. 32 (1812) ................................................................. 16

*Villar v. Crowley Maritime Corp.*,
    990 F.2d 1489 (5th Cir. 1993) ...................................................... 5

*Waldon v. Novartis Pharms. Corp.*,
    2007 U.S. Dist. LEXIS 45809 (N.D. Cal. June14, 2007) .............................. 9

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
    967 F. Supp. 2d 1289 (N.D. Cal. 2013) ........................................... 18

*Watanabe v. Lankford*,
    684 F.Supp.2d 1210 (D.Haw. 2009) ................................................. 9


**Statutes**

28 U.S.C. §1332 .................................................................... 15

28 U.S.C. §1332(a) ................................................................. 7

28 U.S.C. §1367(a) ................................................................ 15

28 U.S.C. §1441(a) ................................................................. 7

28 U.S.C. §1441(b) ............................................................... 2, 7

28 U.S.C. §1441(b)(2) ............................................................................................ 8

OPPOSITION TO MOTION FOR REMAND

# I.    <u>INTRODUCTION</u>

This newly filed lawsuit filed by Plaintiff further demonstrates she and her counsel's utter contempt for this Court's Stay Order.  The Stay Order could not have been any clearer:  Because there is a large potential factual overlap between the *Clifford v. Trump* litigation and the criminal proceedings involving Mr. Cohen, Mr. Cohen's Fifth Amendment rights are heavily implicated.  Accordingly, this Court held that the five *Keating* factors all favored a stay.  [Request for Judicial Notice ("RJN"), ECF No. 53]  Since the Stay Order was issued on April 27, 2018, not only has Ms. Clifford and her controversial counsel continued their unprincipled publicity tour, they have now filed two new lawsuits, both designed to circumvent and otherwise undermine this Court's Stay Order.

Plaintiff and her counsel's first end-run around the Stay Order occurred when they filed a defamation action against Mr. Trump in the Southern District of New York (the "Clifford SDNY Action") one court day after issuance of the Stay Order.  Plaintiff's defamation claim against Mr. Trump falls squarely within the arbitration provision at issue in the *Clifford v. Trump* case, and substantially overlaps with the facts and issues against Mr. Cohen.  This blatant attempt at judge-shopping and forum shopping, and effort to evade the Stay Order, is confirmed in public statements made by Mr. Avenatti before the Stay Order was issued, wherein he stated during an interview on CNN that he planned to file Plaintiff's defamation claim against Mr. Trump in the *Clifford v. Trump* action.

This present lawsuit, wherein Ms. Clifford has sued Mr. Cohen for allegedly aiding and abetting Keith Davidson in breaching Mr. Davidson's fiduciary duty to Ms. Clifford, is yet another attempt at judge and forum shopping, and an effort to circumvent the Stay Order.  As with *Clifford v. Trump*, there is significant overlap between this case, which again involves the communications underlying the creation of the Confidential Settlement Agreement and subsequent performance thereof, and the ongoing criminal investigation involving Mr. Cohen.  Because the

cases are closely related, Plaintiff should have brought these claims as part of the *Clifford v. Trump* litigation.  In a maladroit ploy to circumvent the Stay Order by filing a claim against Cohen in State Court, Plaintiff has sued Davidson as a sham defendant.

There is an existing split between the Central District of California and the Northern and Eastern Districts of California regarding the interpretation of 28 U.S.C. §1441(b) – while the majority view gives the §1441 service language a literal interpretation and permits removal so long as the local defendant has not yet been served, the Central District has declined to literally interpret the statute in situations where it deemed doing so would lead to an absurd result.  While this split ultimately needs to be decided by the Ninth Circuit, it is unlikely to occur in this case due to the simple fact that the authority cited in Plaintiff's motion is distinguishable from the present case.  None of the Central District cases cited by Plaintiff involved a situation where, as here, there was a pre-existing lawsuit containing the same questions of fact and law, along with a violation of a stay order.  Additionally, the Central District cases typically involved a California resident defendant removing a case to federal court prior to service.  Like the Northern and Eastern District authority giving strict interpretation to §1441(b), Cohen, an out-of-state defendant, has removed the case.

This Court also has the inherent authority to either dismiss, stay, or refuse to remand this duplicative lawsuit.  This Court issued the Stay Order to prevent Cohen from being placed in the predicament of having to choose between his Fifth Amendment privilege and defending himself in a civil action.  Notwithstanding the clear meaning of this Court's ruling, Plaintiff and her counsel, by design, have attempted to do just that with this subsequent litigation.  Whether to enforce its order or pursuant to the first-to-file rule, this Court should stop Plaintiff's shenanigans in their tracks.

As a threshold matter, this Court can, and should first determine the very

straightforward issue of whether there is personal jurisdiction over Michael Cohen. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).  If this Court first determines there is no personal jurisdiction, that inquiry ends there with the dismissal of this lawsuit.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her Complaint in the *Clifford v. Trump* action on March 6, 2018.  [RJN, ECF No. 1.]  Plaintiff filed her First Amended Complaint ("FAC") in *Clifford v. Trump* on March 26, 2018.  [RJN, ECF No. 14.]

On March 28, 2018, Plaintiff filed her Motion for Expedited Jury Trial and For Limited Expedited Discovery ("Motion to Expedite"). [RJN, ECF No. 16.] This court denied the Motion to Expedite, without prejudice, on March 29, 2018. [RJN, ECF No. 17.]  EC filed the Motion to Compel Arbitration, which was joined by Mr. Trump, on April 2, 2018.  [ECF Nos. 20, 21.]

On April 8, 2018, Plaintiff filed a Renewed Motion to Expedite.  [RJN, ECF No. 29.]

On April 9, 2018, Plaintiff filed her opposition to the Motion to Compel Arbitration.  [RJN, ECF No. 30.]  Also on April 9, 2018, Mr. Cohen filed an Anti-SLAPP Motion to strike the second claim in the FAC. [RJN, ECF No. 31.]  That same day, the FBI raided Mr. Cohen's residence, office and hotel room, located in New York.  [RJN, ECF No. 38-1.]  In the course of this raid, the FBI sought documents in Mr. Cohen's possession relating to several topics, including the payment of $130,000 to Plaintiff, which is at issue in the *Clifford v. Trump* action. *Id.*

On April 13, 2018, Defendants in *Clifford v. Trump* filed their Joint Ex Parte Application for a stay of this matter (the "Stay Application").  [RNJ, ECF No. 38.] Plaintiff filed her opposition to the Stay Application on April 16, 2018.  [RJN, ECF No. 39.]

On April 18, 2018, Mr. Avenatti stated on *CNN* that Plaintiff intended to bring a claim for defamation against Mr. Trump in *Clifford v. Trump*:

> AVENATTI: We're likely going to be amending our complaint. We're looking at doing that now to **add a defamation claim directly against the president**… And we're likely to file it **in the same case that we're already in**, and we're going to add a claim.
>
> BLITZER: And file it in California?
>
> AVENATTI: Correct.

[RJN, ECF 57-3, Blakely Decl., Ex. F.] (Emphasis added.)

This Court conducted the hearing on the Stay Application on April 20, 2018 and issued the Stay Order on Friday, April 27, 2018, at 2:04 pm.  [RJN, ECF No. 53.]

Two minutes after the Court issued the Stay Order, at 2:06 p.m. on Friday, April 27, 2018, Mr. Avenatti announced on Twitter that Plaintiff intended to file an appeal of the Stay Order, stating: "While we certainly respect Judge Otero's 90 day stay order based on Mr. Cohen's pleading of the 5th, we do not agree with it. We will likely be filing an immediate appeal to the Ninth Circuit early next week." [RJN, Blakely Decl., ¶ 9, Ex. G.]

Instead of filing an appeal, on the next court day, Monday, April 30, 2018, Plaintiff and her counsel reversed course and filed the Clifford SDNY Action. [RJN, ECF 57-3, Blakely Decl., Ex. E.]  Plaintiff's sole claim for defamation against Mr. Trump in the Clifford SDNY Action falls squarely within the arbitration provision that is the subject of the Motion to Compel Arbitration.  [*Id*.; RJN, ECF No. 20.]  The facts underlying Plaintiff's defamation claim against Mr. Trump also heavily overlap with her defamation claim against Mr. Cohen in the *Clifford v. Trump* action, as they both arise out of statements that allegedly accuse Plaintiff of lying about circumstances relating to "her relationship with Mr.

Trump." [FAC, ECF No. 14, ¶ 67; Blakely Decl., Ex. E, ¶¶ 6, 28.]

Plaintiff filed this present action on June 6, 2018. [ECF No. 1.] This action was removed to Federal court the following day, on June 7, 2018. [*Id*.]

Plaintiff will be filing a Motion to Dismiss for Lack of Jurisdiction concurrently with this opposition.

## III. PLAINTIFF'S ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER MICHAEL COHEN

In order to proceed with Clifford's case against Mr. Cohen in California, Plaintiff must first establish that this Court has *in personam* jurisdiction over Mr. Cohen. *Pennoyer v. Neff*, 95 U.S. 714, 720-722 (1877). Mr. Cohen, a resident of New York, has not consented to jurisdiction in California.[1] Furthermore, he does not have the requisite minimum contacts with the State of California. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

Many Courts have faced challenges to personal jurisdiction intertwined with motions to remand. In those cases, as in this one, the courts are presented with both a motion to remand by the plaintiff and a motion to dismiss for lack of personal jurisdiction by the defendant. The cases consistently hold that, when faced with both a motion for lack of personal jurisdiction and a motion to remand, the district court has the discretion to decide which to take up first. *See*, *e.g.*, *Canton Fitzgerald, L.P. v. Yagi Euro (Hong Kong) Ltd*., 88 F.3d 152 (2d Cir. 1996); *Cooper v. McDermott Int'l, Inc*., 62 F.3d 395, 1995 U.S. App. LEXIS 21253 (5th Cir. July 6, 1995) (unpublished); *Villar v. Crowley Maritime Corp*., 990 F.2d 1489,1494-95 (5th Cir. 1993).

In *Canton Fitzgerald*, the United States Court of Appeals for the Second

---

[1] In removing this case to federal court, Mr. Cohen in no way consented to personal jurisdiction. *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) ("[I]f the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal. . . .")

Circuit held that the district court properly exercised its discretion in granting the defendants' motion to dismiss for lack of personal jurisdiction before considering the plaintiffs' motion to remand to state court for lack of subject-matter jurisdiction. *See Canton Fitzgerald* at 157 (stating that "the District Court must be allowed some discretion regarding the order in which it is to consider any question which will dispose of the litigation in the federal courts.").

In *Cooper*, the plaintiff argued that the district court failed to consider his motion to remand before considering the 12(b)(2) motion, as it "saddled [the plaintiff] with the burden of proving a prima facie case of personal jurisdiction, rather than requiring [the defendant] to prove no possibility of personal jurisdiction." *Cooper,* 62 F.3d 395, 1995 U.S. App. LEXIS 21253, at *2.  The Fifth Circuit found this argument "wrong factually and legally." *Id*.  The Fifth Circuit explained: "Analyzing the contacts [the defendant] had with Texas, the [district] court found them insufficient and concluded that [the defendant] had been fraudulently joined.  Contrary to [the plaintiff's] assertion, there is no indication that the district court applied anything but the 'no possibility' standard appropriate for claims of fraudulent joinder." *Id*.  The Fifth Circuit found that the district court was not required to decide the plaintiff's motion to remand before considering the motion to dismiss.  *Id*.  The Fifth Circuit affirmed the order granting the 12(b)(2) motion to dismiss, stating that "judicial economy favors affording district courts the latitude first to evaluate the motion to dismiss because if the district court remands the proceeding, then the state court will probably have to decide the same motion to dismiss for lack of personal jurisdiction that the district court avoided." *Id.*

Where, as here, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, the court does not abuse its discretion by turning directly to personal jurisdiction.  *Ruhgras AG v. Marathon Oil Co*., 526 U.S. 574, 588 (1999).  Accordingly, Cohen respectfully

1  requests that this Court first consider Cohen's Motion to Dismiss for Lack of

2  Personal Jurisdiction.

3  **IV.    U.S.C. § 1441(b) SHOULD NOT BAR REMOVAL**

4      **A. The Standard**

5      When a civil lawsuit is brought in state court a defendant may remove the

6  case to the United States District Court for the district where the state case was

7  filed, if the case falls within the "original jurisdiction" of the federal court. 28

8  U.S.C. § 1441(a).   However, when the removal is based on a federal court's

9  diversity jurisdiction under 28 U.S.C. § 1332(a):[2] such actions "shall be removable

10 only if none of the parties in interest **properly joined and <u>served</u>** as defendants is

11 a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)

12 (Emphasis added.)  This is commonly referred to as the "forum defendant" rule.

13 *See Lively v. Wild Oats Mkts., Inc*., 456 F.3d 933, 939 (9th Cir. 2006).

14     The face of the statute is time and action sensitive.  The trigger to

15 precluding removal is the joinder and service of the complaint on the forum

16 defendant.  When the words of a statute are unambiguous, judicial inquiry is

17 complete.  *Barnhart v. Sigmon Coal Co., Inc*., 534 U.S. 438, 461-62 (2002).  The

18 only exception to giving statutory language its plain meaning is where doing so

19 "would lead to absurd results . . . or would thwart the obvious purpose of the

20 statute."  *Commissioner of Internal Revenue v. Brown*, 380 U.S. 563, 571, (1965)

21     **B. The Circuit Spit**

22     Many District courts throughout the Ninth Circuit have followed the

23 guidelines set forth by the Supreme Court in *Barnhart v. Sigmon* and denied

24

25

26     [2] Removal based on diversity jurisdiction is intended to protect out-of-state
defendants from possible prejudices in state court. *See Tosco Corp. v. Cmtys. for a*
27 *Better Env't*., 236 F.3d 495, 502 (9th Cir. 2001) ("The purpose of diversity
jurisdiction is to provide a federal forum for out-of-state litigants where they are
28 free from prejudice in favor of a local litigant.").

motions for remand based on diversity jurisdiction when removal by a non-forum defendant is made prior to service of the complaint on a forum defendant.  For instance, in *May v. Haas*, 2012 U.S. Dist. LEXIS 148972 (E.D. Cal. Oct. 15, 2012) plaintiffs, who were citizens of Colorado and Kansas, filed a personal injury claim in state court.  Prior to service of the complaint, the matter was removed to federal court pursuant to diversity jurisdiction by the non-California defendant. *Id.* Plaintiffs filed a motion for remand claiming that removal was improper based upon the "forum defendant rule" set forth in 28 U.S.C. §1441(b)(2).  Holding that the removal was proper, the Court held that:

> It is undisputed that Defendant Haas had not been served at the time Schneider National removed the case to this Court. It is also undisputed that complete diversity continues to exist between the parties after Haas has been served. Because no local defendant was served at the time of removal, removal of this action was proper. Therefore, Plaintiffs' Motion to Remand is denied. *Id.* at *8-9.

Similarly, in *Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*, 881 F.Supp.2d 1123 (N.D.Cal. 2012), the Court held:

> The Court disagrees with Plaintiffs. Their proposed reading would improperly discard pivotal parts of the statute as mere surplusage. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 928-29 (9th Cir. 2004). Section 1441 applies to forum defendants "properly joined and served," but Plaintiffs would disregard the words "and served." Plaintiffs urge the Court to follow out-of-district cases that have adopted just this reading. However, the Northern District has consistently followed the alternate view, which gives effect to those words. The Court is not persuaded that it would be appropriate to depart

from that position now and thereby disrupt the settled expectations of litigants in this district.  *Id.* at 1128.[3]

In *Black v. Monster Bev. Corp.*, 2016 U.S. Dist. LEXIS 1881 (C.D. Cal 2016), Judge Fitzgerald acknowledged the split of authority between the Central District of California, which has chosen not to give §1441(b) a strict interpretation, with the other District Courts which have.  *Id.* at *10; *See e.g.*, *Massachusetts Mut. Life Ins. Co. v. Mozilo*, 2012 U.S. Dist. LEXIS 91478 (C.D. Cal. June 28, 2012); *Michael Richard Marsh v. Monster Beverage Corp.*, 2016 U.S. Dist. LEXIS 771 (C.D. Cal. Jan. 4, 2016).  As Judge Fitzgerald concluded:

> Ultimately, the debate among the district courts is for the Ninth Circuit to settle. The consensus in the Northern District of California would favor Defendants, and Defendants understandably rely on the Eastern District opinion in *May*, quoted above. For now, however, the Court follows the consensus in this District—if only because "in most matters it is more important that the applicable rule of law be settled than that it be settled right."

*Id.* at *12.

In *Black v. Monster Bev. Corp*, the Court noted that all of the cases supporting a literal interpretation involved non-forum defendants who removed the

---

[3]*See also Waldon v. Novartis Pharms. Corp.,* 2007 U.S. Dist. LEXIS 45809 (N.D. Cal. June14, 2007); *Allen v. Eli Lilly & Co*., 2010 U.S. Dist. LEXIS 92089 (S.D. Cal. Sept. 2, 2010); *Haseko Homes, Inc. v. Underwriters Ins. Co*., 2010 U.S.Dist. LEXIS 5061 (S.D. Cal. Jan. 22, 2010); *Perez v. McNamee*, 2006 U.S. Dist. LEXIS 89820 (N.D. Cal. Nov. 30, 2006); *Republic Western Ins. Co. v. InternationalIns. Co.* 765 F.Supp. 628 (N.D.Cal. 1991) *Watanabe v. Lankford*, 684 F.Supp.2d 1210, 1218 (D.Haw. 2009); *Mahana v. Enerplus Res. U.S.A. Corp*., 2012 U.S. Dist. LEXIS 75050 (D. Mont. May 30, 2012); *Evans v. Rare Coin Wholesalers, Inc*., 2010 U.S. Dist. LEXIS 13973; *Ott v. Consolidated Freightways Corp. of Del*., 213 F.Supp. 2d 662, 666 (S.D. Miss. 2002).

case before a forum defendant could be served and distinguished those cases from the situation before it where the removing defendants were citizens of California. The court reasoned that "[t]he rationale underlying the forum defendant rule is most clearly contravened when a forum defendant itself removes the action before being served" given that there "is no fear of local bias." *Id.* at 11.

Unlike *Black v. Monster Bev. Corp.,* and analogous to the District Courts that give §1441(b) a strict interpretation, Cohen is not a citizen of California. Rather, he is a resident of New York who has been sued in California state court, despite there being no personal jurisdiction, as part of a scheme by Plaintiff to circumvent the Stay Order in the related *Clifford v. Trump* action. Far from leading to an absurd result, the prompt removal of this action to District Court by Mr. Cohen is consistent with the very purpose of §1441(b): "to provide a federal forum for out-of-state litigants where they are free from prejudice in favor of a local litigant." *Tosco Corp. v. Cmtys. for a Better Env't.*, 236 F.3d 495, 502 (9th Cir. 2001); *See also Lively v. Wild Oats Mkts., Inc.,* 456 F.3d 933, 940 (9th Cir. 2006). As candidly stated by the Supreme Court, the statute means what it is and says what it means. *Barnhart*, *supra*, 534 U.S. at 461-62. Mr. Cohen respectfully submits that this court should apply the plain language of the statute as mandated by the U.S. Supreme Court and the Ninth Circuit. Rather than leading to an absurd result, under the present circumstances strict interpretation of §1441(b) is consistent with the underlying purpose of the forum defendant rule.

**C. Keith Davidson is a Sham Defendant**

It is abundantly clear that Clifford filed this present lawsuit for the sole purpose of circumventing this Court's Stay Order. Clifford's claim against Mr. Davidson is a clumsy ploy to continue to litigate against Mr. Cohen, while at the same time avoiding this Court's wrath by keeping the case in State Court. Clifford's claim against Davidson is devoid of merit and has no chance of success.

Thus, Davidson was fraudulently joined, and he should be disregarded for the purpose of determining diversity jurisdiction.

A nondiverse party named in a state court action may be disregarded if the federal court determines that party's joinder is a "sham" or "fraudulent" so that no possible cause of action has been stated against that party. *Morris v. Princess Cruises Inc*., 236 F. 3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder exists where there is no possibility that the plaintiff will be able to establish liability against the party in question. *Ritchey v. Upjohn Drug Co*., 139 F. 3d 1313, 1318-1319 (9th Cir. 1998). In determining fraudulent joinder, a trial judge may "pierce the pleading" and consider summary judgment-type evidence in the record. *Travis v. Irby*, 326 F. 3d 644, 649 (5th Cir. 2003). In doing so, courts properly consider the allegations of the complaint and facts presented by defendant in its notice of removal. *Ritchey* at 1318.

Plaintiff's first cause of action alleges that Mr. Davidson breached his fiduciary duty to Ms. Clifford through alleged communications with Mr. Cohen concerning mainly the arrangement of a media appearance. [Complaint, ¶ 19, ECF No. 1.] To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty, and damages. *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1183; *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101.

In determining whether a plaintiff has a possibility of recovery, it is helpful to consider the authority governing motions to dismiss. In that context, if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard

is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  Thus, courts must identify which statements in the complaint are factual allegations, which are legal conclusions, and disregard the latter.  *Ashcroft* at 681.

Plaintiff's allegations are a product of complete invention.  From a mere "Call me," Plaintiff then leaps to the conclusion that Mr. Davidson and Mr. Cohen "hatched a plan" to the disadvantage of Ms. Clifford with no evidence of the true subject matter of the phone call.  [Complaint ¶¶ 18-19.]  There is no logical way to extrapolate a conspiracy to circumnavigate Ms. Clifford's interests from the words "call me."  Plaintiff continues through her allegations to put forward the existence of facts that do not exist.  The use of language like "apparently" and "the clear purpose" are used to prop up their imagined inventions of misconduct and are entirely conclusory. [*Id.* at ¶ 34.]  Many of these unsupported allegations are made under "information and belief" for the simple reason that there is no factual basis to support same.  [*Id.* at ¶¶19, 20, 40, 49.]

Examples of Plaintiff's conclusory allegations that should be disregarded include, but are not limited to:

- Davidson and Cohen acted in concert to benefit Mr. Trump [*Id.* at ¶16];
- Davidson and Cohen attempted to manipulate Clifford [*Id.* at ¶17];
- Mr. Cohen, with the assistance of Sean Hannity, tried to convince Clifford to lie to the public [*Id.* at ¶22];
- "[W]ise men" referred to Mr. Trump [*Id.* at ¶29];
- The purpose of the exchange was to provide a false interview [*Id.* at ¶34];

- Mr. Davidson abdicated his role as an advocate and fiduciary of Clifford, and was a puppet of Mr. Cohen [*Id*. at ¶35];

- Mr. Davidson secretly tipped Mr. Cohen off to Ms. Clifford's plan to publicly disclose her purported relationship with Trump and lawsuit [*Id*. at ¶¶ 37, 39);

- Mr. Davidson disclosed to Mr. Cohen during a phone call that Clifford was filing a lawsuit [*Id*. at ¶40];

- Mr. Cohen met with Melania Trump to convince her that Clifford was a liar [*Id*. at ¶41];

- The purported conversation between Mrs. Trump and Mr. Cohen and the subject matter thereof [*Id*. at ¶49];

- Davidson's actions demonstrate he was more interested in being Mr. Cohen and Mr. Trump's "puppet". [*Id*. at ¶50.]

Plaintiff clearly has no idea what was discussed over the telephone between Mr. Davidson and Mr. Cohen, or between Mr. Cohen and President and Mrs. Trump. Plaintiff is simply manufacturing facts to support her frivolous claims and here entire complaint is simply a series of unsupported legal conclusions cast as facts. As the Supreme Court has instructed, such conclusory allegations must be disregarded. *Ashcroft* at 681; *Twombly* at 570.

Moreover, Plaintiff's claim fails because Ms. Clifford was not damaged. A violation of the Rules of Professional Conduct does not, in and of itself, render an attorney liable for damages. Rule 1-100; *Noble v. Sears, Roebuck & Co*. (1973) 33 Cal.App.3d 654, 658; *Mirabito v. Liccardo* (1992) 4 Cal.App.4th 41, 46, fn. 2.) Rather, Plaintiff is required to establish a reasonable basis for the conclusion that it was more likely than not that the conduct of the defendant was a substantial factor in the result of some tangible injury. Here, Plaintiff fails to provide any grounds for her alleged damages.

1    Plaintiff asserts blindly that, "Ms. Clifford had been damaged by Mr.

2 Davison's various breaches in an amount to be proven at trial, but which exceeds

3 $100,000". [Complaint ¶ 60, ECF No. 1.]  This allegation, on its own, is merely a

4 legal conclusion to be disregarded.  Nowhere in the complaint does Plaintiff

5 suggest a theory of how Ms. Clifford had actually been damaged by anything

6 Davidson did or did not do - not to mention to the tune of $100,000.

7    Even assuming for argument's sake that Plaintiff could somehow support

8 her sham allegations, whether Mr. Davidson and Mr. Cohen discussed Ms.

9 Clifford potentially appearing on Mr. Hannity's program does not automatically

10 equate to damages.  Ms. Clifford never appeared on this program, there is no

11 causation to any invented harm Ms. Clifford believes she may have suffered.

12 [Complaint, ¶¶19-35, ECF No. 1.]

13    The same holds true regarding the unsupported allegation that in early

14 March 2018, Mr. Davidson tipped off Mr. Cohen about Ms. Clifford intending on

15 filing a lawsuit against him and Mr. Trump.  [Complaint, ¶¶40-48, ECF No. 1.]

16 Ms. Clifford went ahead and filed her lawsuit in California on March 6, 2018.

17 [RJN, ECF No. 1.]  Plaintiff fails to demonstrate how the purported breach of

18 fiduciary duty caused her any harm whatsoever.

19    Plaintiff's claim that she was somehow damaged in the amount of $100,000

20 for Mr. Davidson's alleged breach of fiduciary duty is not only unsupported, it is

21 contrary to the facts.  As this Court observed during the April 20, 2018 hearing in

22 the *Clifford v. Trump* matter, Ms. Clifford has been undeterred by anything Mr.

23 Cohen or anyone else has said and/or done.  She has now filed three frivolous

24 lawsuits, appeared on *60 Minutes*, *The View* and in a skit on *Saturday Night Live*,

25 and her career as a stripper/porn actress is more lucrative than ever.   Plaintiff has

26 not even come close to satisfying the requirement of demonstrating a causal

27 connection between anything Mr. Davidson has done and any actual harm to her.

28

## V.  THIS COURT HAS SUPPLEMENTAL SUBJECT MATTER JURISDICTION OVER THIS CASE

If the Court decides to first consider subject matter jurisdiction before moving on to personal jurisdiction, remand should be denied for the additional reason that this Court has supplemental subject matter jurisdiction over Plaintiff's claims.   Unlike this authority cited in Plaintiff's motion, in the present case there already existed a pending lawsuit involving the same issues of fact and law, *Clifford v. Trump*.   Furthermore, Plaintiff filed this case in a blatant attempt to run an end-around this Court's ruling staying the *Clifford v. Trump* litigation.

Defendant Cohen removed this case pursuant to 28 U.S.C. §1332.[4] Pursuant to 28 U.S.C. §1367(a):

> "In any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution."

The Supreme Court has held that §1367(a) "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one 'of which the district courts … have original jurisdiction [within the meaning of §1367(a)]."  *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165 (1997).

As set forth in the Notice of Related case filed by Mr. Cohen in this action, *Clifford v. Davidson* involves the same questions of fact and law as *Clifford v. Trump*.   [ECF No. 4.]  These claims should have been brought as part of *Clifford v. Trump*, but that would not have served Plaintiff's purpose, to circumvent the

---

[4] (Michael Cohen resides in New York, Mr. Davidson resides in California, and Ms. Clifford resides in Texas.  (Complaint))

Stay Order.   Now that *Clifford v. Davidson* has been removed, this Court can exercise supplemental jurisdiction and order joinder of Keith Davidson pursuant to FRCP 19, as he is necessary to the just adjudication of the newly filed claims against Cohen.  *Disabled Rights Action Committee v. Las Vegas Eventss, Inc.*, 375 F. 3d 861, 867, fn. 5 (9th Cir. 2004); *Brown v. Pacific Life Ins. Co.*, 462 F. 3d 384, 393-394 (5th Cir. 2006) (noting that Rule 19 inquiry is highly practical and fact based); *Thompson's Point v Safe Harbor Dev. Corp.,* 862 F Supp 594, 599 (DC Me 1994) (the court had supplemental jurisdiction over breach of fiduciary duty claim despite parties living in same state, where it had original jurisdiction over dissolution claim involving diverse parties); *Grogan v O'Neil*.,  292 F. Supp. 2d 1282 (D.C. Kan. 2003).

## VI.   <u>THIS COURT SHOULD EXERCISE ITS INHERENT POWERS AND EITHER DISMISS OR STAY THIS LAWSUIT</u>

It has long been held that "certain implied powers must necessarily result to our Courts of justice from the nature of their institution." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991); citing *United States v. Hudson*, 11 U.S. 32, 7 (1812). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id*.  These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.*, citing *Link v. Wabash R. Co*., 370 U.S. 626, 630-631 (1962).  It is firmly established that the power to punish for contempt is inherent in all courts which reaches both conduct before the court and that beyond the court's confines. *Id*.

Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir.

1987).  These inherent powers are necessary to enable the judiciary to function. *Id.*, citing *Michaelson v. United States*, 266 U.S. 42, 65, 69 (1924) (recognizing the inherent power of the courts to punish for contempt as essential to the administration of justice).

Plaintiff's new lawsuit against Cohen was calculated to circumvent this Court's Stay Order in *Clifford v. Trump*.  This Court's rationale for granting the Stay Order was to prevent prejudice to Cohen for having to choose between his Fifth Amendment rights and defending himself in a civil litigation.  [RJN, ECF. No. 53.]   Plaintiff and her counsel have shown an utter disdain, and indeed a contempt, for this Court's Stay Order by filing this present action – attempting to force Cohen to participate in yet another civil litigation while at the same time being subject to a criminal investigation.

Plaintiff and her counsel's conduct is aggravated by several factors.  Prior to filing *Clifford v. Davidson*, Plaintiff had already violated this Court's Stay Order by filing the Clifford SDNY Action.  As discussed above, the Clifford SDNY Action would necessarily involve a determination of the validity of the Confidential Settlement Agreement and arbitration clause contained therein.  It should also not be lost on this Court that despite being closely related to *Clifford v. Trump*, neither the Clifford SDNY Action or *Clifford v. Davidson* were filed in the Central District of California, where *Clifford v. Trump* was already pending.

The day this Court issued the Stay Order Mr. Avenatti stated:

While we certainly respect Judge Otero's 90 day stay order based on

Mr. Cohen's pleading of the 5th, we do not agree with it. We will likely

be filing an immediate appeal to the Ninth Circuit early next week.

Justice delayed is justice denied.  [RJN, ECF No. 57-3, Ex. 6.]

Likely realizing that the Ninth Circuit would deny a writ of mandamus seeking to overturn the Stay Order, Plaintiff and her counsel chose instead to demonstrate disrespect this Court's authority and filed the Clifford SDNY Action

in another jurisdiction.  Similarly, Plaintiff filed *Clifford v. Davidson* in California State Court for the same reason - to circumvent this Court and its Stay Order. There really is no other explanation for Plaintiff's conduct.

In addition to enforcement of orders, Federal Courts routinely exercise their inherent authority under the "first-to-file" rule.  As the Ninth Circuit has instructed, the first-to-file rule, which purpose is to avoid duplicative litigation, was developed to "serve the purpose of promoting efficiency well and should not be disregarded lightly."  *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979); *see also Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

A district court has significant discretion to apply the first-to-file rule where the record supports application.  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.")  A court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *Id.*  If the court determines that the first to file rule is applicable, it may, in its discretion, dismiss, stay, or transfer the second filed lawsuit.  *Pacesetter Sys*., at 94-95.

For instance, in *Jiangmen Kinwai Furniture Decoration Co. v. Int'l Mkt. Ctrs., Inc*., 719 Fed. Appx. 556, 558 (9th Cir. 2017), the Ninth Circuit upheld a dismissal under the first to file rule where the plaintiff acted in bad faith by seeking disruptive, overbroad discovery, thereby multiplying court proceedings and increasing court costs—the very "gamesmanship" that the first-to-file rule was meant to impede.  *See also Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc*., 787 F.3d 1237 (9th Cir. 2015) (court stayed the second lawsuit).  The first-to-file rule is not limited to cases filed in separate districts.  *Wallerstein v. Dole Fresh Vegetables, Inc*., 967 F. Supp. 2d 1289, 1294 (N.D. Cal. 2013); *see also Abrahams*

*v. Hard Drive Productions, Inc*., 2012 U.S. Dist. LEXIS 75025 (N.D. Cal. May 30, 2012); *Intervet, Inc. v. Merial, Ltd*., 535 F. Supp. 2d 112, 115 (D.D.C. 2008); *Olin Corp. et al. v. Cont'l Cas. Co. et al*, 2011 U.S. Dist. LEXIS 41685 (D. Nev. Apr. 6, 2011).[5]

There is no dispute regarding the chronology of the lawsuits, *Clifford v. Davidson* was filed after *Clifford v. Trump*.  As set forth in the Notice of Related Cases, there is also a similarity between the questions of fact and law. [ECF No. 4.]  *See Kohn Law Grp*. at 1241 (to determine whether two suits involve substantially similar issues, we look at whether there is "substantial overlap" between the two suits.)  While Davidson is not a party to *Clifford v. Trump*, the parties are substantially similar for purposes of the first-to-file rule.  *Id.* at 1240.

Whether to enforce its Stay Order or via the application of the first-to-file rule, Mr. Cohen requests that the claims asserted against him in *Clifford v. Davidson* either be dismissed or stayed, and that at a minimum this Court deny Clifford's Motion to Remand.

IV. **CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that the Court deny Clifford's Motion to Remand.

Dated: July 2, 2018                    BLAKELY LAW GROUP


By:  */s/ Brent H. Blakely*
_____
BRENT H. BLAKELY
Attorneys for Defendant
MICHAEL COHEN

_____

[5] While Mr. Cohen is cognizant that courts have held that the justification for the first to file rule is reduced in actions in the same district involving the same judge *See Henderson v. JPMorgan Chase Bank*, 2011 U.S. Dist. LEXIS 103552 (C.D. Cal. 2011), it is within the sound discretion of the court whether to apply the rule under the specific circumstances of each case.  *Alltrade* at 625.

1    Pursuant to Local Rule 5-4.3.4, I Brent H. Blakely, hereby attest that all

2    other signatories to this *Opposition*, and on whose behalf it is submitted, concur in

3    its content and have authorized its filing.

4

5    Dated: July 2, 2018                                   /s/ Brent H. Blakely

6                                                          BRENT H. BLAKELY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28