1  AVENATTI & ASSOCIATES, APC
   Michael J. Avenatti, CA State Bar No. 206929
2  Ahmed Ibrahim, CA State Bar No. 238739
3  520 Newport Center Drive, Suite 1400
   Newport Beach, CA 92660
4  Telephone:  949.706.7000
   Facsimile:   949.706.7050
5

6  Attorneys for Plaintiff Stephanie Clifford
   a.k.a. Stormy Daniels
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10 STEPHANIE CLIFFORD a.k.a.              CASE NO.:  2:18-cv-05052-SJO-FFM
   STORMY DANIELS, an individual,        Assigned for All Purposes to the
11                                        Honorable S. James Otero
12                Plaintiff,
                                          PLAINTIFF STEPHANIE
13                                        CLIFFORD'S OPPOSITION TO
   vs.                                    DEFENDANT MICHAEL COHEN'S
14                                        MOTION FOR STAY OF THIS
                                          ACTION
15

16 KEITH M. DAVIDSON, an individual,
   MICHAEL COHEN, an individual, and
17 DOES 1 THROUGH 10, inclusive          Hearing Date:  August 6, 2018
18                                        Hearing Time:  10:00 a.m.
                                          Location:  Courtroom 10C
19
                Defendants.               California Superior Court Action Filed:
20                                        June 6, 2018
21

22 AND RELATED COUNTER-CLAIMS
   AND CROSS-CLAIMS.
23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL CKGROUND.......................2

      A.    Plaintiff's Complaint Against Messrs. Davidson and Cohen. .......................2

      B.    The Criminal Investigation of Mr. Cohen in New York. ...............................5

      C.    Procedural Facts. ..........................................................................6

III.  LEGAL STANDARD ...........................................................................6

IV.   ARGUMENT......................................................................................8

      A.    Mr. Cohen Fails to Meet His Burden of Demonstrating He
            Is Entitled to a Stay or that His Fifth Amendment Rights
            Are Heavily Implicated. ...................................................................8

            1.    Mr. Cohen Fails to Meet His Evidentiary Burden. ..............................8

            2.    The Absence of an Indictment Weighs in Favor of
                  Denying a Stay. ...................................................................10

            3.    The Existence of a Stay in the Declaratory Relief
                  Action Does Not Require a Stay in this Case Because
                  There Is No Evidence of a Substantial Overlap
                  Between this Case and the Criminal Matter. ...................................11

      B.    Less Drastic Measures are Available than a Blanket Stay........................12

      C.    Defendant Davidson Does Not Raise Any Fifth Amendment
            oncerns.......................................................................................14

      D.    The *Keating/Molinaro* Factors Do Not Require a Stay. ..........................15

            1.    The Prejudice to Plaintiff and Her Interest in
                  Proceeding Expeditiously Weigh Against a Stay. .............................15

            2.    The Purported Burden on Defendant Does Not
                  Require a Stay. ....................................................................15

3.   The Conservation of Judicial Resources Weighs
     Against a Stay. ............................................................................ 17

4.   The Interests of Non-Parties Does Not Weigh in
     Favor of a Stay. ........................................................................... 18

5.   The Public Interest in the Speedy Resolution of this
     Action Weighs Against a Stay. ..................................................... 18

E.   In the Alternative, the Court Should Impose a Partial Stay
     By Precluding the Parties From Deposing Mr. Cohen. ................................. 19

V.   **CONCLUSION** ....................................................................................... 20

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY
OF THIS ACTION**

# TABLE OF AUTHORITIES

## CASES

AIG Prop. Cas. Co. v. Cosby,
  No. CV 15-04842-BRO (RAOx), 2016 WL 6662733 (C.D. Cal. July 15, 2016) ....... 10

Cruz v. City of Maywood,
  No. CV 07-1999 GPS (JCX), 2008 WL 11342706 (C.D. Cal. Sept. 3, 2008) ........... 11

Davis v. Fendler,
  650 F.2d 1154 (9th Cir. 1981) ................................................................................ 9, 12

Doe v. City of San Diego,
  No. 12-CV-689-MMA-DHB, 2012 WL 6115663 (S.D. Cal. Dec. 10, 2012) ............ 13

Earp v. Cullen,
  623 F.3d 1065 (9th Cir. 2010) ................................................................................... 8, 9

Edwards v. C. I. R.,
  680 F.2d 1268 (9th Cir. 1982) ........................................................................................ 9

ESG Capital Partners LP v. Stratos,
  22 F. Supp. 3d 1042 (C.D. Cal. 2014) .................................................................. passim

Estate of Limon v. City of Oxnard,
  No. CV 13-01961 SS, 2013 WL 12131359 (C.D. Cal. Dec. 10, 2013) ..................... 19

Estate of Morad v. City of Long Beach,
  No. CV 16-06785 MWF (AJWx), 2017 WL 5187826
  (C.D. Cal. Apr. 28, 2017) ................................................................................... 13, 16

F.T.C. v. E.M.A. Nationwide, Inc.,
  767 F.3d 611 (6th Cir. 2014) ......................................................................................... 6

Fed. Sav. & Loan Ins. Corp. v. Molinaro,
  889 F.2d 899 (9th Cir. 1989) ................................................................................. passim

IBM v. Brown,
  857 F. Supp. 1384 .......................................................................................................... 17

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY
OF THIS ACTION**

In re Grand Jury Proceedings,
    13 F.3d 1293 (9th Cir. 1994) ....................................................................... 9

Keating v. Office of Thrift Supervision,
    45 F.3d 322 (9th Cir. 1995) ................................................................. passim

Lindsey v. City of Pasadena,
    No. CV1608602SJORAOX, 2017 WL 5891097 (C.D. Cal. Mar. 24, 2017)........ 16, 17

Louis Vuitton Malletier S.A. v. LY USA, Inc.,
    676 F.3d 83 (2d Cir. 2012) ....................................................................... 6

Microfinancial Inc. v. Premier Holidays International, Inc.,
    385 F.3d 72 (1st Cir. 2004)........................................................................ 6

O. Thronas, Inc. v. Blake,
    No. CIV.09-00353DAE-LEK, 2010 WL 931924 (D. Haw. Mar. 10, 2010) ........ 13, 15

Perez v. Cty. of Los Angeles,
    No. CV 15-09585 SJO (FFMx), 2016 WL 10576622
    (C.D. Cal. May 3, 2016).............................................................. 10, 16, 18

Roberts v. Brown,
    No. 2:13-CV-07461-ODW, 2014 WL 3503094 (C.D. Cal. July 14, 2014) ............... 10

S.E.C. v. Braslau,
    No. 14-01290-ODW (AJWx), 2015 WL 9591482
    (C.D. Cal. Dec. 29, 2015) ...................................................... 13, 15, 16, 17

Sanrio, Inc. v. Ronnie Home Textile Inc.,
    No. 2:14-CV-06369-RSWL, 2015 WL 1062035
    (C.D. Cal. Mar. 10, 2015) ...................................................... 13, 16, 17, 18

Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.,
    720 F. Supp. 805 (N.D. Cal. 1989)........................................................... 15

United States v. Pierce,
    561 F.2d 735 (9th Cir. 1977) .................................................................. 13

Zicarelli v. New Jersey State Comm'n of Investigation,
    406 U.S. 472 (1972)........................................................................... 8, 12

-v-

# **STATUTES**

28 U.S.C. §§ 471-82 ........................................................................................ 18

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY OF THIS ACTION**

# I.    INTRODUCTION

Defendant Michael Cohen ("Mr. Cohen") seeks to stay this action filed by plaintiff Stephanie Clifford ("Plaintiff" or "Ms. Clifford") against Mr. Cohen and her previous attorney Keith Davidson ("Mr. Davidson"). Mr. Cohen contends he is entitled to a stay because of his Fifth Amendment rights against self-incrimination. Yet, Mr. Cohen makes no attempt to support his motion by establishing *any* connection (let alone, a substantial connection) between this action and the criminal investigation against him pending in the Southern District of New York. In fact, Mr. Cohen provides **no evidence** from which the Court is capable of finding that defending this case would require Mr. Cohen to choose between relinquishing his Fifth Amendment rights and defending this civil action—a choice that would not even justify a stay to begin with. Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995).

Instead, the following is the entirety of Mr. Cohen's argument for a stay: the Court imposed a stay in a different case.

This does not come close to justifying a stay in this case. The law is clear that the Court must assess the need for a stay on a case-by-case basis on the merits of the "particular circumstances and competing interests" involved in each case. Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). Mr. Cohen has not done that here. To the contrary, he asks the Court to issue what has been universally described as an "extraordinary remedy" based on assumptions and speculation.

And moreover, even if the Court elected to take up Mr. Cohen's invitation to speculate, nothing has been placed before the Court to enable the Court to find that the criminal investigators in New York are looking into Mr. Cohen's activities in aiding Keith Davidson to breach Mr. Davidson's fiduciary duties to his client. This stands in stark contrast to the Court's stay order in the Clifford v. Trump matter, where the Court found (over Plaintiff's continued objection) that there was an evidentiary basis to conclude that the government was investigating the legality of the $130,000 payment made to Plaintiff in connection with the October 2016 non-disclosure and settlement agreement. This case,

on the other hand, involves a completely different set of facts focusing on whether *Mr. Davidson* violated duties owed to his client and whether Mr. Cohen assisted him in those efforts.

Finally, Plaintiff proposes an alternative to a **blanket stay** in the event that the Court finds that Mr. Cohen should not have to answer questions under oath that may implicate his Fifth Amendment rights, no matter how remote or speculative that risk may be. Namely, the Court should impose a partial stay by prohibiting any deposition of Mr. Cohen by any party for a period of 90 days, but allow the remainder of the case to proceed forward. Such a limited stay would appropriately balance the interests of Plaintiff and Mr. Cohen. No conceivable intrusions on Mr. Cohen's Fifth Amendment rights would occur, while Plaintiff would be able to pursue the remainder of her case without delay.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Complaint Against Messrs. Davidson and Cohen.

Plaintiff filed this action against Mr. Davidson and Mr. Cohen on June 6, 2018 in the Superior Court for the State of California, County of Los Angeles, Central District. [Dkt No. 1-1 (hereafter, "Complaint").] The following is a summary of the allegations of the Complaint.

Plaintiff retained Mr. Davidson, a California attorney and citizen, as her personal attorney. [Dkt. No. 1-1 ¶¶2, 8.] Mr. Cohen is an attorney licensed in the State of New York and, during the relevant time period, served as Donald J. Trump's attorney. [Dkt. No. 1-1 ¶9.] In his capacity as Ms. Clifford's attorney, Mr. Davidson communicated with Mr. Cohen in connection with an October 2016 agreement for which Mr. Cohen acted as an attorney for Mr. Donald J. Trump. [Id. ¶11.] Mr. Cohen was thus well aware at all times that Mr. Davidson was Ms. Clifford's attorney and that Mr. Davidson owed Ms. Clifford a continuing duty of loyalty and was in a fiduciary relationship with Ms. Clifford. [Id. ¶12.]

On the morning of January 17, 2018, Mr. Cohen became aware of an article

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY
OF THIS ACTION**

published by *In Touch* magazine regarding Ms. Clifford and President Donald J. Trump. [Id. ¶16.]  Believing this article to be harmful to his client, Mr. Cohen proceeded to enlist Mr. Davidson to assist him in an attempt to use and manipulate Ms. Clifford in a manner designed to benefit Mr. Cohen and Mr. Trump.  [Id. ¶17.]  After learning of the story, Mr. Cohen sent the first of many iMessages to Mr. Davidson at or about 12:13 PM EST stating "Call me."  [Id. ¶18.]

Over the course of that day, January 17, 2018, Mr. Cohen and Mr. Davidson exchanged a series of text messages, the purpose of which was to attempt to arrange for Plaintiff to appear on Mr. Sean Hannity's television program on *Fox News* to falsely deny the accuracy of the *In Touch* article.  [Dkt. No. 1-1 ¶¶19-35.]  Plaintiff alleges that Mr. Cohen and Mr. Davidson discussed this plan on the phone after Mr. Cohen initially texted Mr. Davidson, asking him to call him.  [Dkt. No. 1-1 ¶¶18-19.]  Thereafter, at 2:32 PM, Mr. Cohen texted Mr. Davidson, stating "I have her tentatively scheduled for Hannity tonight. Call me after your trial."  [Dkt. No. 1-1 ¶20.]  Plaintiff alleges on information and belief, that Mr. Cohen scheduled Ms. Clifford to appear on Mr. Hannity's program only after consultation with Mr. Trump.  [Id.]

When Mr. Davidson responded that Plaintiff was not available at that time, Mr. Cohen sent several more messages in a desperate attempt to convince Ms. Clifford, with the assistance of Mr. Hannity, to lie to the American public about her relationship with Mr. Trump via the *Fox News* broadcast.  [Dkt. No. 1-1 ¶22.]  Specifically, at one point, Mr. Cohen sent the following message:

> This is no good.  We need her as by doing tomorrow you just create another news cycle instead of putting an end to this one.

[Dkt. No. 1-1 ¶24.]  Mr. Cohen then proceeded to send rapid fire messages requesting that Mr. Davidson call him and wondering why he hadn't heard anything from him.  [Dkt. No. 1-1 ¶¶25-26.]

Shortly thereafter, however, Mr. Cohen apparently changed his mind about the necessity of Plaintiff appearing on the *Hannity* show that night, sending a message to Mr.

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY OF THIS ACTION**

1   Davidson stating:

2       Let's forget tonight. They [Fox News and the Trump Administration] would rather

3       tomorrow so they can promote the heck out of the show.

4   [Dkt. No. 1-1 ¶27.]

5       Later that night, Mr. Cohen again changed his mind and messaged Mr. Davidson

6   again, having apparently concluded that it was no longer is his own or his client's best

7   interest for Ms. Clifford to appear at all:

8       Keith, The wise men all believe the story is dying and don't think it's smart for her

9       to do any interviews.  Let her do her thing but no interviews at all with anyone.

10  [Dkt. No. 1-1 ¶28.]  Mr. Davidson agreed without hesitation and responded, "100%."

11  [Dkt. No. 1-1 ¶30.]

12      As Plaintiff alleges, the clear purpose of this exchange between Defendants was to

13  arrange a media appearance of Plaintiff, not for the benefit of Plaintiff or to ensure that

14  Plaintiff truthfully told her side of the story to the media, but for Plaintiff to provide a

15  false interview and lie to the American people to serve the best interests of Mr. Trump

16  and Mr. Cohen.  [Dkt. No. 1-1 ¶34.]  Once Mr. Cohen concluded that it was no longer in

17  his own best interest, or those of his client, per the recommendation of these "wise men,"

18  including Mr. Trump, Mr. Cohen called off the appearance entirely and Mr. Davidson

19  agreed without hesitation.  [Dkt. No. 1-1 ¶35.]  In other words, Mr. Davidson abdicated

20  his role as an advocate and fiduciary of his client Ms. Clifford, and instead elected to

21  advance the interests of Mr. Cohen and Mr. Trump at the expense of Plaintiff.  [Id.]

22      Thereafter, in late February 2018, Mr. Davidson became aware that Plaintiff was

23  changing counsel and was preparing to publicly disclose her relationship with Mr.

24  Trump.  [Dkt. No. 1-1 ¶36.]  Despite his on-going duty of loyalty to Plaintiff, including

25  the obligation to maintain client confidences, Mr. Davidson secretly tipped Mr. Cohen off

26  to Ms. Clifford's plans.  [Id. ¶37.]  Armed with this information, and in an attempt to

27  intimidate Plaintiff into silence, on or about February 27, 2018, Mr. Cohen initiated an

28  arbitration proceeding against Plaintiff in order to obtain a temporary restraining order to

silence Plaintiff and prevent her from publicly telling her story. [Id. ¶38.]

Again, in early March of 2018, Mr. Davidson once more secretly tipped off Mr. Cohen regarding Plaintiff's plans, this time after learning that Plaintiff was on the verge of filing a lawsuit against Mr. Cohen and Mr. Trump. [Id. ¶39.] Specifically, on or about March 1, 2018, Mr. Cohen and Mr. Davidson engaged in at least eight (8) more text messages and at least one phone call during which call Plaintiff believes that Mr. Davidson first disclosed to Mr. Cohen that Plaintiff was planning to file a lawsuit against him and Mr. Trump the following week and that the lawsuit would publicly disclose the existence of Plaintiff's prior relationship with Mr. Trump. [Dkt. No. 1-1 ¶ 40.]

Plaintiff contends the disclosure of any information to Mr. Cohen regarding Plantiff's contemplated action was a clear violation of Mr. Davidson's duty of loyalty and obligation to maintain Plaintiff's client confidences. [Dkt. No. 1-1 ¶50.] Mr. Cohen, as an attorney with knowledge of Mr. Davidson's role as Ms. Clifford's counsel, knew at all times Mr. Davidson could not engage in the conduct at issue. [Id. ¶ 51.] Moreover, to compound the numerous violations of attorney ethics, Mr. Cohen recorded phone calls that he had with Mr. Davidson wherein Mr. Davidson disclosed client confidences and other confidential information relating to Plaintiff. [Id. ¶52.] Despite Plaintiff's request that he do so, Mr. Cohen has refused to provide Ms. Clifford with those recorded conversations that include her attorney-client privileged information. [Id. ¶53.]

Accordingly, Plaintiff asserts two causes of action in the Complaint for: (1) breach of fiduciary duty against Mr. Davidson, and (2) aiding and abetting breach of fiduciary duty against Mr. Cohen.

**B.    The Criminal Investigation of Mr. Cohen in New York.**

As of the date of this filing, Plaintiff is not aware of any criminal charges being filed against Mr. Cohen or any indictment having been made public. [Avenatti Decl., ¶4.] Little is actually known about the criminal investigation in New York, other than the fact of the FBI raids of Mr. Cohen's home, office, and hotel room, the fact that items were seized from Mr. Cohen, and that an elaborate privilege review of the materials has

1   been ongoing wherein the district court in New York appointed a special master to

2   oversee the process.  As noted below, Mr. Cohen has offered no evidence suggesting that

3   he is being investigated for anything relating to any of the conduct set forth above.

4        The President of the United States, however, offered his insights on what the

5   criminal investigation of Mr. Cohen is about.  On April 26, Mr. Trump gave a phone

6   interview with the television program *Fox & Friends*.   [Avenatti Decl., Ex. 1

7   http://video.foxnews.com/v/5776719790001/?#sp=show-clips.]   In the interview, when

8   asked about the criminal investigation in New York of Mr. Cohen, Mr. Trump responded

9   that:  "they're looking [in]to something having to do with his [i.e., Mr. Cohen's]

10  business" and not the legal work he did for Mr. Trump in this case; that Mr. Cohen did

11  "absolutely nothing wrong"; and that Mr. Cohen is pleading the Fifth because "he's got

12  other things—he's got businesses."  [See Avenatti Decl., Ex. 1 at 14:15-16:00.]

13       **C.**   **Procedural Facts.**

14       As noted above, Plaintiff filed this action against Mr. Davidson and Mr. Cohen on

15  June 6.  Mr. Cohen removed the case to this Court on June 7.  [Dkt No. 1.]  The same

16  day, Mr. Davidson filed a counterclaim for defamation against Plaintiff, Michael

17  Avenatti, Avenatti & Associates, and Eagan Avenatti, LLP [Dkt No. 6], along with an

18  answer [Dkt No. 5] and a cross-claim against Mr. Cohen for violation of the California

19  Invasion of Privacy Act.  [Dkt No. 7.]

20       On June 22, Plaintiff filed a motion to remand this action back to state court.  [Dkt

21  No. 15.]  The motion is fully briefed and has been taken under submission by the Court.

22  [Dkt No. 30.]

23       On July 2, Mr. Cohen filed an untimely answer to Plaintiff's Complaint.  [Dkt Nos.

24  16, 19.]

25  **III.   LEGAL STANDARD**

26       A stay based on the existence of a criminal action is an "extraordinary" remedy.

27  See, e.g., Microfinancial Inc. v. Premier Holidays International, Inc., 385 F.3d 72, 79 (1st

28  Cir. 2004); F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 627 (6th Cir. 2014); Louis

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY**
**OF THIS ACTION**

Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012); ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d 1042, 1045 (C.D. Cal. 2014) (a "stay is an extraordinary remedy that should be granted only when justice so requires.") (citation and quotation omitted).

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995); see also Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989) ("While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution."). "Nevertheless, a court may decide in its discretion to stay civil proceedings . . . 'when the interests of justice seem [ ] to require such action.'" Keating, 45 F.3d at 324 (citation omitted) (alterations in original). "A court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case." Molinaro, 889 F.2d at 902. In doing so, "[o]bviously a court should consider the extent to which the defendant's fifth amendment rights are implicated." Id.

Other factors a court should consider will vary according to the case itself, but generally will include:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Molinaro, 889 F.2d at 902-03; Keating, 45 F.3d at 325.

Here, as explained below, neither Defendant Cohen's purported Fifth Amendment concerns, nor the remaining five Keating/Molarino factors, support the issuance of a stay.

## IV.   ARGUMENT

### A.   Mr. Cohen Fails to Meet His Burden of Demonstrating He Is Entitled to a Stay or that His Fifth Amendment Rights Are Heavily Implicated.

#### 1.   Mr. Cohen Fails to Meet His Evidentiary Burden.

As a threshold matter, Mr. Cohen's motion should be denied because he offers no evidence demonstrating that his Fifth Amendment rights are implicated by continuing to defend this action.

In deciding whether to stay civil proceedings in the face of parallel criminal proceedings, "a court should consider the extent to which the defendant's fifth amendment rights are implicated." Molinaro, 889 F.2d at 902.  However, it is well settled that the mere assertion of the Fifth Amendment right against self-incrimination by the attorneys for a civil defendant does not make the issuance of a stay automatic. Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) ("The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.").  To the contrary, "[i]n the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." Id. (citations and quotations omitted).  In fact, "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." Keating, 45 F.3d at 326. "Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." Id.

In addition, a mere assertion that Fifth Amendment rights are implicated is insufficient to establish that such rights are legitimately invoked.  That is because it "is well established that the privilege protects against real dangers, nor remote and speculative possibilities." Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 478 (1972) (emphasis added); see also Earp v. Cullen, 623 F.3d 1065, 1070

1   (9th Cir. 2010) ("A witness justifiably claims the privilege if he is 'confronted by

2   substantial and real, and not merely trifling or imaginary, hazards of incrimination.'"); In

3   re Grand Jury Proceedings, 13 F.3d 1293, 1295 (9th Cir. 1994); Edwards v. C. I. R., 680

4   F.2d 1268, 1270 (9th Cir. 1982).

5       For this reason, establishing that Fifth Amendment rights are implicated requires

6   that "a witness must show that his testimony would 'support a conviction under a federal

7   criminal statute" or "furnish a link in the chain of evidence needed to prosecute the

8   claimant for a federal crime.'"  Earp, 623 F.3d at 1070.  "A proper assertion of a Fifth

9   Amendment privilege requires, at a minimum, a good faith effort to provide the trial

10  judge with sufficient information from which he can make an intelligent evaluation of the

11  claim."  Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981).  The requirement that

12  civil defendants substantiate their Fifth Amendment claims serves the important purpose

13  of ensuring that they are not invoking the Fifth Amendment for opportunistic reasons to

14  avoid having to defend a case.  See ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d

15  1042, 1046 (C.D. Cal. 2014) (a defendant "can't have it both ways, using the Fifth

16  Amendment only when it is convenient for him and his interests.").

17      Here, Mr. Cohen offers no evidence demonstrating that his purported Fifth

18  Amendment concerns justify the issuance of a stay.  There is no evidence showing the

19  criminal investigation in New York has any relationship to the allegations of wrongdoing

20  against Mr. Cohen in this case.  There is no declaration from Mr. Cohen linking the

21  events underlying this litigation to the criminal investigation.  Mr. Cohen does not

22  attempt to explain why his testimony would be self-incriminating, or that the government

23  is investigating or pursuing criminal charges related to Mr. Cohen's assistance of Mr.

24  Davidson's breach of his fiduciary duties to Plaintiff.  Indeed, the only evidence Mr.

25  Cohen submits pertains to Mr. Cohen's continued obsession and preoccupation with

26  Plaintiff's counsel's media appearances.  [See Blakely Decl., ¶¶2 and 5, Exs. A and D.]

27  This does not come close to satisfying his heavy burden.  The Court cannot rely on

28  assumptions and conjecture.

On the contrary, the only relevant evidence before the Court is that the criminal investigation in New York pertains exclusively to Mr. Cohen's "business" activities. On April 26, in response to a question on *Fox News* asking him to react to Mr. Cohen taking the Fifth Amendment, President Trump responded confidently that:  "But this doesn't have to do with me.  Michael is a business man.  He's got a business.  He also practices law.  I would say, probably the big thing is his business.  **And they're looking at something having to do with his business.  I have nothing to do with his business.**" [Avenatti Decl., Ex. 1 at 14:43.]  Asked bluntly "why is he pleading the Fifth," Mr. Trump responded:  "**Because he's got other things.  He's got businesses.  And from what I understand, they're looking at his businesses**."  [Avenatti Decl., Ex. 1 at 15:40.]

### 2.    The Absence of an Indictment Weighs in Favor of Denying a Stay.

Moreover, although it has been over three months since the FBI raids on February 9, Mr. Cohen proffers no evidence of an indictment.  The law is clear that in the absence of an indictment, the case for staying civil proceedings is "far weaker."  Molinaro, 889 F.2d at 903.  As this Court has previously ruled, in the absence of evidence "tending to show that criminal charges . . .  are likely to be brought" through, for example, an "affidavit by a member of the DA's office" or similar law enforcement official, there is very little reason to impose a stay based on Fifth Amendment concerns.  Perez v. Cty. of Los Angeles, No. CV 15-09585 SJO (FFMx), 2016 WL 10576622, at *2 (C.D. Cal. May 3, 2016) (Otero, J.); see also id. at *3 (there is "no basis in either law or reason to create" a rule that civil litigation should be stayed based on the mere "**possibility** of bringing criminal charges . . .").

But even if Mr. Cohen had been indicted, Mr. Cohen must nevertheless show substantial overlap between the facts of the criminal proceeding and the civil proceeding because otherwise, a stay "would eviscerate th[e] element of the *Keating* rubric" relating to the implicating of Fifth Amendment rights.  Roberts v. Brown, No. 2:13-CV-07461-ODW, 2014 WL 3503094, at *3 (C.D. Cal. July 14, 2014); see also AIG Prop. Cas. Co. v. Cosby, No. CV 15-04842-BRO (RAOx), 2016 WL 6662733, at *8 (C.D. Cal. July 15,

2016) ("In sum, the Court concludes that continuing with this declaratory relief action while Defendant faces criminal charges involving a completely different set of facts will likely not implicate Defendant's Fifth Amendment right against self-incrimination."). And even when the facts of the civil and criminal proceedings are similar, this "is not enough by itself to stay a civil action." ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014); Cruz v. City of Maywood, No. CV 07-1999 GPS (JCX), 2008 WL 11342706, at *2 (C.D. Cal. Sept. 3, 2008) (denying stay even where indictments were issued and the facts overlap because the defendant can "refuse to testify on a question-by-question basis.").

### 3. The Existence of a Stay in the Declaratory Relief Action Does Not Require a Stay in this Case Because There Is No Evidence of a Substantial Overlap Between this Case and the Criminal Matter.

Mr. Cohen appears to be of the belief that he does not need to make any legal or factual showing that he is entitled to a stay, and that instead, he may merely "piggyback" off of the stay the Court issued a stay in the separate Clifford v. Trump matter. No. 2:18-cv-02217-SJO-FFM, (C.D. Cal., filed Mar. 6, 2018) (the "Declaratory Relief" action). Mr. Cohen is incorrect. He is required to make a case-specific showing that a stay is appropriate. The law is clear that "[a] court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the **particular circumstances** and **competing interests** involved in the case." Molinaro, 889 F.2d at 902 (emphasis added). Mr. Cohen does not attempt to explain why the particular circumstances and competing interests involved in *this* case require a stay.

Indeed, the two cases are completely different. The Declaratory Relief action involves the existence and validity of a non-disclosure agreement and settlement agreement in which Plaintiff was paid $130,000 in hush money. The Court was persuaded that the supposed "subject matter of the criminal investigation, and the documents seized, in some part, reference the $130,000 payment made to Ms. Clifford pursuant to the Agreement." [Avenatti Decl., Ex. 2 at 4.] The Court's determination that Mr. Cohen's Fifth Amendment rights were heavily implicated and its decision to stay the case rested in

1   substantial part on this finding, as it stated "[a]ny criminal investigation into this payment

2   would likely have significant overlap with Plaintiff's assertions that the Agreement, and

3   the payment in particular, had an illegal purpose."  [Id.]

4        In contrast, no such factual overlap has been shown to exist here between the

5   present case and the criminal investigation.   Plaintiff asserts that her prior lawyer,

6   defendant Keith Davidson, breached her fiduciary duties by taking actions contrary to her

7   interests, and that Mr. Cohen aided and abetted Mr. Davidson's breach.   More

8   specifically, the case concerns communications between Mr. Davidson and Mr. Cohen

9   suggesting that the two conspired to put Plaintiff on national television and give false

10  statements in order to benefit Mr. Cohen and his client, Donald Trump.  It also involves

11  Mr. Davidson's additional act of disloyalty of tipping off Mr. Cohen to Plaintiff's legal

12  strategy, which led to Mr. Cohen's filing of an arbitration proceeding against Plaintiff.

13  Plaintiff also seeks the return of her client file from Mr. Davidson.  Mr. Cohen makes no

14  attempt to demonstrate that any of his alleged acts to assist Mr. Davidson to breach his

15  fiduciary duty to Plaintiff constitute crimes, or are being investigated as crimes.

16       In sum, it is not Plaintiff's burden to prove a negative—i.e., that Mr. Cohen has no

17  Fifth Amendment concerns.  Rather, it is *Mr. Cohen's* burden to prove that he *does* have

18  legitimate Fifth Amendment rights *and* that those rights are heavily implicated.

19  Accordingly, Mr. Cohen's motion must be denied.

20       **B.     Less Drastic Measures are Available than a Blanket Stay**

21       The Fifth Amendment protects against "real dangers, not remote and speculative

22  possibilities."  Zicarelli, 406 U.S. at 478.  Mr. Cohen must, at a minimum, "provide the

23  trial judge with sufficient information from which he can make an intelligent evaluation of

24  the claim."  Davis, 650 F.2d at 1160.  Mr. Cohen, however, has failed to proffer evidence

25  supporting his motion for a stay.  The Court is thus left to speculate and surmise whether a

26  stay should be issued.  Indeed, Mr. Cohen has not even been called upon to testify and,

27  therefore, it is not clear whether any question posed to him would even require him to

28  invoke the Fifth Amendment.

Based on this record, as other courts have found, "[a] stay of an action is not necessary where a defendant's fifth amendment rights can be protected through less drastic means, such as asserting the privilege on a question by question basis and implementing protective orders." Doe v. City of San Diego, No. 12-CV-689-MMA-DHB, 2012 WL 6115663, at *2 (S.D. Cal. Dec. 10, 2012) (citing O. Thronas, Inc. v. Blake, No. CIV.09-00353DAE-LEK, 2010 WL 931924, at *3 (D. Haw. Mar. 10, 2010)); see also S.E.C. v. Braslau, No. 14-01290-ODW (AJWx), 2015 WL 9591482, at *3 (C.D. Cal. Dec. 29, 2015) (the defendant can "protect his Fifth Amendment rights through other, less drastic measures, like those discussed in O. Thronas."); Sanrio, Inc. v. Ronnie Home Textile Inc., No. 2:14-CV-06369-RSWL, 2015 WL 1062035, at *3 (C.D. Cal. Mar. 10, 2015) (noting that "[a]s to other potentially incriminating evidence outside of [corporate] business records, if [the defendants] are indicted, 'the Court can rule on individual assertions of fifth amendment privilege if and when such assertions occur.'").

Here, therefore, Mr. Cohen may be deposed and may elect to assert any Fifth Amendment rights he deems appropriate at that time on a question by question basis. The notion that all questions relevant to this case are subject to Fifth Amendment objections is simply without merit. United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977) (in invoking the Fifth Amendment, a "blanket refusal to answer any question is unacceptable."). The Fifth Amendment privilege "requires that the Fifth Amendment claim be raised in response to specific questions." Id. And even where Mr. Cohen deems it necessary to invoke the Fifth Amendment, the mere possibility that an adverse inference may be drawn from Mr. Cohen's assertion of the Fifth Amendment does not justify a stay. Keating, 45 F.3d at 326; Estate of Morad v. City of Long Beach, No. CV 16-06785 MWF (AJWx), 2017 WL 5187826, at *9 (C.D. Cal. Apr. 28, 2017) ("Simply being forced to invoke the Fifth Amendment, and accordingly incurring an adverse inference, is not by itself the sort of prejudice that categorically favors a stay.").

The Court's determination in the Declaratory Relief Action to deny Plaintiff's request to impose less drastic measures is inapplicable here. The Court found in the

Declaratory Relief Action that Mr. Cohen was "the alleged mastermind behind the Agreement and the person with the most direct knowledge of the facts and circumstances surrounding its formation" and thus "his testimony would be indispensable to the disposition of this action."  [Avenatti Decl., Ex. 2 at 7.]  In this case, on the other hand, *Mr. Davidson*—not Mr. Cohen—is the person with the most direct knowledge of the underlying facts and circumstances concerning the fiduciary duties that were breached.  Mr. Cohen's testimony, therefore, cannot be deemed "indispensable to the disposition of this action."

Further, as noted above, this case is different because there has been no showing that Mr. Cohen is being investigated in the criminal proceedings in New York for any of his acts relating to this action.  In the Declaratory Relief action, however, the Court based its decision not to impose less drastic measures than a stay because the requested discovery on the "Agreement's legality or Mr. Trump's consent" were both topics which "could have an impact on the criminal proceedings and may be legitimately interpreted as potentially incriminating to Mr. Cohen."  [Avenatti Decl., Ex. 2 at 7.]  Because Mr. Cohen has not, and cannot, make a similar showing here, his motion should be denied.

Finally, Mr. Cohen fails to demonstrate that he and Mr. Davidson would be incapable of adequately defending themselves in the litigation without Mr. Cohen.

**C.    Defendant Davidson Does Not Raise Any Fifth Amendment Concerns.**

Returning to the legal standard the Court must apply to Mr. Cohen's request, the Court "should consider the extent to which the defendant's fifth amendment rights are implicated."  Molinaro, 889 F.2d at 902; Keating, 45 F.3d at 325.  In this regard, Mr. Cohen's application ignores two very important facts:  Mr. Davidson is also a defendant, and yet he does not presently claim his Fifth Amendment rights are personally implicated.  In fact, Mr. Davidson did not file his own declaration or submit any evidence supporting a stay.  Accordingly, even if the Court were to agree that Mr. Cohen has properly established that his Fifth Amendment rights are substantially implicated (which, as shown above, he has failed to do), a blanket stay should be denied.  See O. Thronas,

1  2010 WL 931924, at *3 ("Fifth Amendment rights can be protected through less drastic

2  means" than a stay).

3        **D.**     **The *Keating/Molinaro* Factors Do Not Require a Stay.**

4        The remainder of the five (5) <u>Keating/Molinaro</u> factors do not require a stay, as

5  explained below.

6            **1.**     **The Prejudice to Plaintiff and Her Interest in Proceeding**

7                **Expeditiously Weigh Against a Stay.**

8        The first of the factors to be considered is the plaintiff's interest in proceeding

9  expeditiously and any prejudice to Plaintiff likely caused by the issuance of a stay.

10  <u>Keating</u>, 45 F.3d at 325.  As to this factor, courts uniformly recognize that a "civil

11  plaintiff has an interest in having her case resolved quickly." <u>ESG Capital</u>, 22 F. Supp. 3d

12  at 1046.  This is so because "[w]itnesses relocate, memories fade, and persons allegedly

13  aggrieved are unable to seek vindication or redress for indefinite periods of time on end."

14  <u>Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.</u>, 720 F. Supp. 805, 809 (N.D. Cal. 1989);

15  <u>see</u> <u>also</u> <u>Braslau</u>, 2015 WL 9591482, at *3 ("The Court also recognizes that a stay would

16  increase the odds that key witnesses may become unavailable, that their memories will

17  fade, and that documents in their possession may be lost.").

18        Consequently, Plaintiff is necessarily prejudiced by the delay caused by a stay.

19  Here, these concerns are magnified by the fact that Mr. Davidson still has not turned over

20  the entirety of Plaintiff's client file to Plaintiff.  A blanket stay would further delay this

21  from occurring.  Mr. Cohen makes no argument explaining why Plaintiff would not be

22  prejudiced.  Instead, he relies entirely on the Court's stay order in the Declaratory Relief

23  Action.  As explained above, however, Mr. Cohen must establish a right to a stay on a

24  case-by-case basis, not by pointing to an order in a different action.

25            **2.**     **The Purported Burden on Defendant Does Not Require a Stay.**

26        The second factor is the consideration of any prejudice to a defendant likely to be

27  caused by the denial of the requested stay.  <u>Keating</u>, 45 F.3d at 325.  Although Mr. Cohen

28  argues he will suffer prejudice, "[c]ourts have found that *even when a defendant's Fifth*

*Amendment rights are implicated*, this factor does not support granting a stay unless the defendant can show other 'compelling factors as described in *Keating*.'" ESG Capital, 22 F. Supp. 3d at 1046 (emphasis added); see also Lindsey v. City of Pasadena, No. CV1608602SJORAOX, 2017 WL 5891097, at *4 (C.D. Cal. Mar. 24, 2017) (Otero, J.) (same).  Indeed, as cited above, "[n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." Keating, 45 F.3d at 326.  As such, "[t]he Ninth Circuit has found that where a defendant has had adequate time to prepare for a related civil trial, the burden on the defendant is substantially diminished." Id. (citing Keating, 45 F.3d at 325).

Not surprisingly, courts routinely reject the argument that the Fifth Amendment prevents the defendant from presenting a defense because a party "has no constitutional right to a stay of this civil proceeding" and a defendant "may assert his Fifth Amendment privilege on an issue-by-issue basis throughout the proceedings, giving him the opportunity to defend himself even while asserting the privilege."  Braslau, 2015 WL 9591482, at *4; see also Estate of Morad v. City of Long Beach, No. CV 16-06785 MWF (AJWx), 2017 WL 5187826, at *9 (C.D. Cal. Apr. 28, 2017) ("Simply being forced to invoke the Fifth Amendment, and accordingly incurring an adverse inference, is not by itself the sort of prejudice that categorically favors a stay."); Sanrio, 2015 WL 1062035, at *3 ("Defendants have not identified any legitimate burden that could result from this Action proceeding, other than Defendants' "Fifth Amendment concerns…").[1]

Here, Defendants make no showing sufficient to justify a stay.  Rather, they rely entirely on the fact that Mr. Cohen will have to sit for a deposition and testify.  In doing

---

[1] In fact, as this Court has noted, although defendants such as Mr. Cohen typically complain of the prejudice from denial of a stay, because they typically contest the relief sought by the plaintiff, they are in fact "prejudiced by a stay, as delaying resolution of [the] civil lawsuit would affect [the defendant's] ability to extricate himself from what he claims is a meritless lawsuit against him." Perez, 2016 WL 10576622, at *3 (Otero, J.).

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY**
**OF THIS ACTION**

so, Mr. Cohen does not address or distinguish the well-established rule that this *alone* is insufficient to establish the requisite prejudice. <u>Lindsey</u>, 2017 WL 5891097, at *4. Rather, Mr. Cohen must establish "other compelling factors" and fails to do so here. <u>ESG Capital Partners</u>, 22 F. Supp. 3d at 1046.   Further, Mr. Cohen fails to establish any connection between this case and the criminal investigation, and therefore, fails to demonstrate that he will even have to assert Fifth Amendment objections at his deposition to begin with.

Moreover, Defendant Davidson has submitted nothing to establish that he would suffer any prejudice from denial of a stay.  He does not submit a declaration or offer any evidence.  This, too, weighs against a stay.

### 3.    The Conservation of Judicial Resources Weighs Against a Stay.

The third <u>Keating</u> factor permits the court to determine whether a stay will impact "the convenience of the court in the management of its cases, and the efficient use of judicial resources." <u>Keating</u>, 45 F.3d at 325.  As to this factor, the law is clear that the Court has an "interest in clearing its docket." <u>Molinaro</u>, 889 F.2d at 903.  Consequently, "[t]his factor usually weighs against granting a stay . . ." <u>Braslau</u>, 2015 WL 9591482, at *4; <u>see</u> <u>also</u> <u>Sanrio</u>, 2015 WL 1062035, at *4 (same).  Indeed, "a policy of issuing stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration." <u>IBM v. Brown</u>, 857 F. Supp. 1384, 1392.

Here, as a preliminary matter, rejecting a stay and instead remanding the case to state court serves the interests of judicial economy.  Moreover, Mr. Cohen again offers nothing to justify a stay in this particular case.  He continues to simply rely on the stay order in the Declaratory Relief Action without establishing any legitimate need for invoking his Fifth Amendment rights here or why he believes this case has substantial overlap with the criminal investigation.  Particularly in the absence of an indictment, Mr. Cohen offers no concrete reason to conclude that the criminal investigation will in any meaningful way obstruct the resolution of this action.  Thus, this factor weighs against a

1  stay.

### 4.   The Interests of Non-Parties Does Not Weigh in Favor of a Stay.

The fourth factor is the interest of third parties.  <u>Keating</u>, 45 F.3d at 325.  Mr. Cohen identifies no third parties with an interest in a stay.  This factor is thus neutral. <u>Sanrio</u>, 2015 WL 1062035, at *4.

### 5.   The Public Interest in the Speedy Resolution of this Action Weighs Against a Stay.

The final factor is the public interest.  <u>Keating</u>, 45 F.3d at 325.  The public has an interest in the "speedy resolution" of this action.   <u>Keating</u>, 45 F.3d at 325; <u>see also</u> <u>Molinaro</u>, 889 F.2d at 903 (finding that the interest of the public "would be frustrated by further delay.").  Indeed, as this Court has previously held, the "public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act of 1990." <u>Perez</u>, 2016 WL 10576622, at *4 (citing 28 U.S.C. §§ 471-82).  "A stay would clearly impair that interest."  <u>Id.</u>

Here, this case implicates the public interest because it seeks to vindicate the duties attorneys owe to their clients.   Lawyers should not be permitted to prey on the vulnerabilities of their clients by doing that which Mr. Davidson is alleged to have done in this case—namely, to violate client confidences and secretly conspire with the adversary to place the adversary's interests above that of the client.  The public interest is also elevated by the significant media attention the case has received based on, among other things, the fact that it involves the personal attorney to the President of the United States. For example, in <u>Keating</u> the Ninth Circuit held that "in light of the inordinate amount of media attention given to the case, any delay would have been detrimental to public confidence" in judicial enforcement and resolution of pending actions.  <u>Keating</u>, 45 F.3d at 326.  The same conclusion should be reached here.  This action should proceed in the normal course towards resolution, as to do otherwise would impair the public interest in the outcome of this action and the resolution of the claims directly involving and impacting the personal lawyer to the President.

Mr. Cohen's argument as to why this factor favors a stay is wholly inadequate. He relies on the Court's stay in the Declaratory Relief Action, but again makes no attempt to tie his request for a stay to the facts of this case.

### E.   In the Alternative, the Court Should Impose a Partial Stay By Precluding the Parties From Deposing Mr. Cohen.

In the alternative, instead of imposing a blanket stay of the entire case, the Court should impose a partial stay by precluding any party from deposing Mr. Cohen for 90 days. To be clear, Plaintiff does not believe that even a partial stay is necessary based on the record before the Court. However, if the Court believes that an abundance of caution is justified with regards to Mr. Cohen's Fifth Amendment rights, there is no reason that the remainder of the action cannot proceed. In Estate of Limon v. City of Oxnard, No. CV 13-01961 SS, 2013 WL 12131359, at *2 (C.D. Cal. Dec. 10, 2013), for example, the Court partially stayed the action by granting a stay of discovery with regards to individual officers named in the lawsuit who were present for the shooting of the victim in a wrongful death case. The Court ruled that "Defendants are not entitled to a *complete stay* that would, in effect, *penalize Plaintiffs for diligently pursuing their claims*." Id. (emphasis added). In reaching this conclusion, the Court found "Defendants have not explained why a complete stay is the only feasible way to protect the individual officers' constitutional rights." Id. at *5.

A partial stay would balance the interests of Plaintiff and Mr. Cohen. No conceivable intrusions on Mr. Cohen's Fifth Amendment rights would occur, as he would not be called upon to sit for a deposition and answer questions that may require him to self-incriminate. Plaintiff would be permitted to pursue the remainder of her case without delay, including, among other things, obtaining discovery from Mr. Davidson and others. The requirements of Keating and Molinaro would, without serious dispute, tilt decidedly in favor of such an approach because: (1) Mr. Cohen's Fifth Amendment rights would not be heavily implicated, (2) he would not be prejudiced, (3) Plaintiff would not be significantly delayed from pursuing this action, (4) judicial resources would be used more

1   efficiently by advancing the Court's interest in clearing its docket and avoiding the need

2   to resolve discovery disputes relating to Mr. Cohen's deposition, and (5) the public

3   interest would be served.

4   **V.    CONCLUSION**

5       For the reasons stated above, Plaintiff respectfully requests the Court DENY

6   Defendant Michael Cohen's motion for a stay of this action in its entirety.   In the

7   alternative, Plaintiff respectfully requests the Court issue a partial stay in accordance with

8   the relief requested above.

9   DATED:  July 16, 2018                    AVENATTI & ASSOCIATES, APC

10

11

12                                      /s/ Michael J. Avenatti

13                                   MICHAEL J. AVENATTI
                                     Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO MOTION FOR STAY
OF THIS ACTION**