1  AVENATTI & ASSOCIATES, APC
2  Michael J. Avenatti, CA State Bar No. 206929
   Ahmed Ibrahim, CA State Bar No. 238739
3  520 Newport Center Drive, Suite 1400
   Newport Beach, CA 92660
4  Telephone:  949.706.7000
   Facsimile:   949.706.7050
5
6  Attorneys for Plaintiff Stephanie Clifford
7  a.k.a. Stormy Daniels

8              UNITED STATES DISTRICT COURT
9            CENTRAL DISTRICT OF CALIFORNIA

10 STEPHANIE CLIFFORD a.k.a.          CASE NO.:  2:18-cv-05052-SJO-FFM
11 STORMY DANIELS, an individual,     Assigned for All Purposes to the
                                      Honorable S. James Otero
12                  Plaintiff,
13        vs.                         **PLAINTIFF STEPHANIE
                                      CLIFFORD'S OPPOSITION TO
14                                    DEFENDANT MICHAEL COHEN'S
                                      RULE 12(b)(2) MOTION TO
15 KEITH M. DAVIDSON, an individual,  DISMISS ALL CLAIMS AGAINST
16 MICHAEL COHEN, an individual, and  HIM DUE TO LACK OF PERSONAL
   DOES 1 THROUGH 10, inclusive       JURISDICTION**
17
18                                    **Hearing Date:  August 6, 2018**
                   Defendants.        **Hearing Time:  10:00 a.m.**
19                                    **Location:  Courtroom 10C**
20
21                                    **California Superior Court Action
                                      Filed:  June 6, 2018**
22 AND RELATED COUNTER-CLAIMS
23 AND CROSS-CLAIMS
24
25
26
27
28

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................ 1

II.  FACTUAL BACKGROUND ........................................................... 2

III.  ARGUMENT ................................................................................. 5

    A.  Mr. Cohen's Motion Should Be Denied Because It Is
        Untimely. ............................................................................ 6

    B.  Mr. Cohen Fails to Proffer Any Evidence to Support His
        Motion. ............................................................................... 6

    C.  The Text Messages and Telephone Calls that Form the Basis
        of the Claims Were Purposefully Directed to California. ............... 8

        1.  Mr. Cohen Engaged In Intentional Acts Directed to
            California. ................................................................. 8

        2.  Mr. Cohen's Conduct Was Expressly Aimed at the
            Forum State. ............................................................. 9

        3.  Mr. Cohen's Conduct Caused Harm in the Forum. ........... 14

    D.  Plaintiff's Claims Arise Out Of Mr. Cohen's Forum Related
        Activities. ........................................................................... 15

    E.  The Exercise of Jurisdiction Over Mr. Cohen Is Reasonable. ....... 17

    F.  In the Alternative, the Court Should Order Jurisdictional
        Discovery. .......................................................................... 20

IV.  CONCLUSION .......................................................................... 20

# TABLE OF AUTHORITIES

## CASES

Am. Master Lease LLC v. Idanta Partners, Ltd.,
  225 Cal.App.4th 1451 (2014) .......................................................................9

Bancroft & Masters, Inc. v. Augusta Nat. Inc.,
  223 F.3d 1082 (9th Cir. 2000) ..........................................................9, 16, 17

Brainerd v. Governors of the Univ. of Alberta,
  873 F.2d 1257 (9th Cir. 1989) ...............................................1, 9, 10, 13

Calder v. Jones,
  465 U.S. 783 (1984)...........................................................................6, 8, 13

Carteret Sav. Bank, FA v. Shushan,
  954 F.2d 141 (3d Cir. 1992) .......................................................................11

Chapman v. Krutonog,
  256 F.R.D. 645 (D. Haw. 2009) ................................................................13

CollegeSource, Inc. v. AcademyOne,
  653 F.3d 1066 (9th Cir. 2011) .......................................................17, 18, 19

Cummings v. W. Trial Lawyers Ass'n,
  133 F. Supp. 2d 1144 (D. Ariz. 2001) ......................................................13

Data Disc v. Systems Technology Associates,
  557 F.2d 1280 (9th Cir. 1977) ..................................................................13

Dole Food Co. v. Watts,
  303 F.3d 1104 (9th Cir. 2002) ............................................................passim

Felland v. Clifton,
  682 F.3d 665 (7th Cir. 2012)......................................................................12

Hall v. LaRonde,
  56 Cal.App.4th 1342 (1997) ........................................................................6

Keeton v. Hustler Magazine,
    465 U.S. 770 (1984)..................................................................................14, 15

Mavrix Photo v. Brand Techs.,
    647 F.3d 1218 (9th Cir. 2011) ......................................................7, 8, 13, 15

Meade Instruments Corp. v. Reddwarf Starware LLC,
    No. SA CV 98-240-GLT (ANx), 1998 WL 377041 (C.D. Cal. May 11, 1998).........14

Panavision Int'l, L.P. v. Toeppen,
    141 F.3d 1316 (9th Cir. 1998) ...............................................................18, 19

Schneider v. Hardesty,
    669 F.3d 693 (6th Cir. 2012)..................................................................11, 12

Wells Fargo & Co. v. Wells Fargo Exp. Co.,
    556 F.2d 406 (9th Cir. 1977) ........................................................................20

Wien Air Alaska, Inc. v. Brandt,
    195 F.3d 208 (5th Cir. 1999) ..........................................................10, 11, 14

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,
    433 F.3d 1199 (9th Cir. 2006) ............................................................6, 7, 8, 15

**STATUTES**

Cal. Code Civ. Proc. § 410.10................................................................................6

**RULES**

Fed. R. Civ. P. 12(b) ..........................................................................................6

PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S
RULE 12(b)(2) MOTION TO DISMISS

## I.    INTRODUCTION[1]

This action alleges that Plaintiff Stephanie Clifford's ("Plaintiff" or "Ms. Clifford") attorney, defendant Keith M. Davidson ("Mr. Davidson"), a California resident, breached his fiduciary duties to Plaintiff and that Defendant Michael Cohen ("Mr. Cohen") aided and abetted those breaches.  The Complaint sets forth in detail the communications between Cohen and Mr. Davidson in California whereby Cohen enlisted Mr. Davidson to act in a manner detrimental to Plaintiff and in favor of Cohen's client, Donald J. Trump.  [Dkt. No. 1-1 ¶¶15-53.]  The communications from Mr. Cohen, in the form of text messages and phone calls, were directed to Mr. Davidson in California, specifically Los Angeles, by Mr. Cohen.  Mr. Cohen also initiated arbitration proceedings against Plaintiff in California.   [Id. ¶38; Avenatti Decl. ¶4.]   By virtue of these communications and conduct, Mr. Cohen therefore purposely directed his actions to the forum state.  See Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989) (telephonic communications and a single letter aimed at the forum were sufficient to establish specific jurisdiction.).   Even though Plaintiff is not herself a California resident, these communications harmed Plaintiff in California because Mr. Davidson's breach occurred in California.  See Dole Food Co. v. Watts, 303 F.3d 1104, 1113 (9th Cir. 2002) (jurisdictionally significant harm can occur "where the bad acts occurred.").    The cause of action against Mr. Cohen arises *directly* out of these communications.  Mr. Cohen does not meet his heavy burden to establish a "compelling" case that the exercise of jurisdiction would be unreasonable.  Id. at 1114.  Accordingly, and as argued herein, it is proper to exercise personal jurisdiction over Mr. Cohen.  Mr. Cohen's Motion should thus be denied.[2]

---

[1] The Court should not reach this Motion because it lacks subject matter jurisdiction as argued in Plaintiff's previously filed Motion to Remand.

[2] It also cannot be said that jurisdiction over Mr. Cohen in California would be inconvenient or unexpected.  In addition to his decision to initiate an arbitration proceeding in California and to litigate the pending Clifford v. Trump matter without having objected to personal jurisdiction, Mr. Cohen engaged in conduct in California as a "lawyer" through his representation of Elliott Broidy, "a Los Angeles-based investor," in

Continued on the next page

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S**
**RULE 12(b)(2) MOTION TO DISMISS**

## II.     FACTUAL BACKGROUND

As alleged, Mr. Davidson is an attorney licensed in the State of California and was retained by Plaintiff as her personal attorney.  [Dkt. No. 1-1 ¶8.]  Mr. Davidson resides in the West Judicial District of this Court.  [Id. at ¶7; Dkt. No. 7 ¶1.]  Mr. Davidson's law offices are located in Beverly Hills.  [Dkt. No. 7 at 1:1-4.]  For most of the relevant time period at issue, Mr. Davidson was ostensibly acting in his capacity as Plaintiff's attorney and agent in California.  [Dkt. No. 1-1 ¶8; Dkt. No. 5 ¶8.]  Mr. Cohen is an attorney licensed in the State of New York and, during the relevant time period, served as Donald J. Trump's attorney.  [Dkt. No. 1-1 ¶9.]

In his capacity as Plaintiff's attorney, Mr. Davidson communicated with Mr. Cohen in connection with an October 2016 agreement for which Mr. Cohen acted as an attorney for Mr. Donald J. Trump.  [Id. ¶11.]  Mr. Cohen was thus well aware at all times that Mr. Davidson was Plaintiff's attorney and that Mr. Davidson owed Plaintiff a continuing duty of loyalty and was in a fiduciary relationship with Plaintiff.  [Id. ¶12.]

As alleged in the Complaint, on the morning of January 17, 2018, Mr. Cohen became aware of an article published by *In Touch* magazine regarding Plaintiff and President Donald J. Trump.  [Id. ¶16.]  Believing this article to be harmful to his client, Mr. Cohen proceeded to enlist Mr. Davidson to assist him in an attempt to use and manipulate Plaintiff in a manner designed to benefit Mr. Cohen and Mr. Trump.  [Id. ¶17.]  Mr. Cohen sent the first of many iMessages to Mr. Davidson at or about 12:13 PM EST stating "Call me."  [Id. ¶18; Avenatti Decl. Ex. 1.]  This message was sent from Mr. Cohen's phone to Mr. Davidson's phone which has a Los Angeles area code (310).  [Avenatti Decl. Ex. 1.]  As previously noted, Mr. Davidson is a California resident and his offices are also located in the West Judicial District in Beverly Hills.  [Dkt. No. 1-1 ¶7; Dkt. No. 7 at 1:1-4.]

Continued from the previous page

connection with Mr. Broidy's $1.6 million settlement with a former Playboy model who Broidy allegedly impregnated. <https://www.washingtonpost.com/politics/trump-lawyer-negotiated-16-million-settlement-for-gop-donor-with-playboy-model/2018/04/13/2f05_1f90-3f3e-11e8-974f-aacd97698cef_story.html?utm_term=.2acb53bd94f2>

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2) MOTION TO DISMISS**

Over the course of that day, January 17, 2018, Mr. Cohen and Mr. Davidson exchanged at least seventeen (17) messages the purpose of which was to attempt to arrange for Plaintiff to appear on Mr. Sean Hannity's television program to *falsely* deny the accuracy of the *In Touch* article.   [Dkt. No. 1-1 ¶¶19-35; Avenatti Decl. Ex. 1.] Plaintiff alleges that Mr. Cohen and Davidson discussed this plan on the phone after Mr. Cohen initially texted Mr. Davidson, asking him to call him.   [Dkt. No. 1-1 ¶¶18-19; Avenatti Decl. Ex. 1.]   Thereafter, at 2:32 PM, Mr. Cohen texted Mr. Davidson, stating "I have her tentatively scheduled for Hannity tonight. Call me after your trial."   [Dkt. No. 1-1 ¶20; Avenatti Decl. Ex. 1.]   Plaintiff alleges on information and belief, Mr. Cohen scheduled Plaintiff to appear on Mr. Hannity's program only after consultation with Mr. Trump.  [Id.]

When Mr. Davidson responded that Plaintiff was not available at that time, Mr. Cohen sent several more messages in a desperate attempt to convince Plaintiff, with the assistance of Mr. Hannity, to lie to the American public about her relationship with Mr. Trump via the *Fox News* broadcast.   [Dkt. No. 1-1 ¶22.]   Specifically, at one point, Mr. Cohen sent the following message:

> This is no good.  We need her as by doing tomorrow you just create another news cycle instead of putting an end to this one.

[Dkt. No. 1-1 ¶24; Avenatti Decl. Ex. 1.]   Mr. Cohen then proceeded to send rapid fire messages requesting that Mr. Davidson call him and wondering why he hadn't heard anything from him.   [Dkt. No. 1-1 ¶¶25-26; Avenatti Decl. Ex. 1.]

Shortly thereafter, however, Mr. Cohen apparently changed his mind about the necessity of Plaintiff appearing on the Hannity show that night, sending a message to Mr. Davidson stating:

> Let's forget tonight. They [Fox News and the Trump Administration] would rather tomorrow so they can promote the heck out of the show.

[Dkt. No. 1-1 ¶27; Avenatti Decl. Ex. 1.]

Later that night, Mr. Cohen again changed his mind and messaged Mr. Davidson again, having apparently concluded that it was no longer is his own or his client's best

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

interest for Plaintiff to appear at all:

> Keith, The wise men all believe the story is dying and don't think it's smart for her to do any interviews.  Let her do her thing but no interviews at all with anyone.

[Dkt. No. 1-1 ¶28; Avenatti Decl. Ex. 1.]  Mr. Davidson agreed without hesitation and responded, "100%."  [Dkt. No. 1-1 ¶30; Avenatti Decl. Ex. 1.]

As Plaintiff alleges, the clear purpose of this exchange between Defendants was to arrange a media appearance of Plaintiff, not for the benefit of Plaintiff or to ensure that Plaintiff truthfully told her side of the story to the media, but for Plaintiff to provide a false interview and lie to the American people to serve the best interests of Mr. Trump and Mr. Cohen.  [Dkt. No. 1-1 ¶34.]  Once Mr. Cohen concluded that it was no longer in his own best interest, or those of his client, per the recommendation of these "wise men," including Mr. Trump, Mr. Cohen called off the appearance entirely and Mr. Davidson agreed without hesitation.  [Dkt. No. 1-1 ¶35.]  In other words, Mr. Davidson abdicated his role as an advocate and fiduciary of his client Ms. Clifford, and instead elected to be a "puppet" for Mr. Cohen and Mr. Trump in order to advance their interests at the expense of Plaintiff.  [Id.]  Mr. Cohen accomplished this entirely via communications directed by telephone and text message to Mr. Davidson in California.  [Avenatti Decl. Ex. 1.]

Thereafter, in late February 2018, Mr. Davidson became aware that Plaintiff was changing counsel and was preparing to publicly disclose her relationship with Mr. Trump.  [Dkt. No. 1-1 ¶36.]  Despite his on-going duty of loyalty to Ms. Clifford, including the obligation to maintain client confidences, Mr. Davidson secretly tipped Mr. Cohen off to Plaintiff's plans.  [Id. ¶37.]  Armed with this information, and in an attempt to intimidate Plaintiff into silence, on or about February 27, 2018, Mr. Cohen initiated an arbitration proceeding in California against Plaintiff in order to obtain a temporary restraining order to silence Plaintiff and prevent her from publicly telling her story.  [Id. ¶38; Avenatti Decl. ¶4.]

Again, in early March of 2018, Mr. Davidson once more secretly tipped off Mr. Cohen regarding Plaintiff's plans, this time after learning that Plaintiff was on the verge

1   of filing a lawsuit against Mr. Cohen and Mr. Trump. [Dkt. No. 1-1 ¶39.] Specifically,

2   on or about March 1, 2018, Mr. Cohen and Mr. Davidson engaged in at least eight (8)

3   more text messages and at least one phone call during which call Plaintiff believes that

4   Mr. Davidson first disclosed to Mr. Cohen that Plaintiff was planning to file a lawsuit

5   against him and Mr. Trump the following week and that the lawsuit would publicly

6   disclose the existence of Plaintiff's prior relationship with Mr. Trump. [Dkt. No. 1-1 ¶

7   40; Avenatti Decl. Ex. 1.]

8       The disclosure of any information to Mr. Cohen regarding Plaintiff's contemplated

9   action was a clear violation of Mr. Davidson's duty of loyalty and obligation to maintain

10  Plaintiff's client confidences. [Dkt. No. 1-1 ¶50.]   Mr. Cohen, as an attorney with

11  knowledge of Mr. Davidson's role as Ms. Clifford's counsel, knew at all times Mr.

12  Davidson could not engage in the conduct at issue. [Id. ¶ 51.] Moreover, to compound

13  the numerous violations of attorney ethics, Mr. Cohen recorded phone calls that he had

14  with Mr. Davidson wherein Mr. Davidson disclosed client confidences and other

15  confidential information relating to Plaintiff. [Id. ¶52.] Despite Plaintiff's request, Mr.

16  Cohen has refused to provide Plaintiff with the recorded conversations including her

17  attorney-client privileged information. [Id. ¶53.]

18      Accordingly, Plaintiff brings this action to remedy both the breach of duty by Mr.

19  Davidson as her attorney and Mr. Cohen's efforts to aid and abet Mr. Davidson's breach.

20  As set forth above, Mr. Cohen's conduct in connection with his wrong-doing is based

21  entirely on his communications, via text message and telephone calls, with Mr. Davidson

22  in California. [See Avenatti Decl. Ex. 1.] As argued herein, this Court has jurisdiction

23  over Mr. Cohen on the basis of these actions directed toward the forum and out of which

24  the claims at issue directly arise.

## III.   ARGUMENT

26      The exercise of personal jurisdiction over Mr. Cohen is proper based on his

27  communications with Plaintiff's attorney, Mr. Davidson, in California, and the fact that

28  this action arises *directly* out of those communications. Further, Mr. Cohen fails to

1   establish that the exercise of jurisdiction would be unreasonable, which is his burden.

2        **A.**    **Mr. Cohen's Motion Should Be Denied Because It Is Untimely.**

3        Before examining the merits of Mr. Cohen's motion, as a threshold matter, Mr.

4   Cohen's motion must be summarily denied as untimely.  After improperly removing this

5   action from state court on June 7, 2018, Mr. Cohen was required to file a responsive

6   pleading no later than June 28, 2018.  [Dkt. No. 16.]  Mr. Cohen did not file an Answer

7   until July 2, 2018.  [Dkt. No. 19.]  Mr. Cohen was also required to file any Rule 12

8   motion he wished to make by June 28.  Fed. R. Civ. P. 12(b) ("A motion asserting any of

9   these defenses must be made before pleading if a responsive pleading is allowed.").  Mr.

10  Cohen did not do so and instead filed the present Motion on July 3, 2018.  [Dkt. No. 24.]

11  Both Mr. Cohen's Answer and this Motion are untimely.  Pursuant to this Court's Civil

12  Case Standing Order the "Court will not decide late-filed motions, and a party or counsel

13  who files such late papers may be subject to sanctions…"  [CV Standing Order ¶24(d).]

14  The Court should not therefore consider this Motion at all.

15       **B.**    **Mr. Cohen Fails to Proffer Any Evidence to Support His Motion.**

16       "The Due Process Clause of the Fourteenth Amendment to the United States

17  Constitution permits personal jurisdiction over a defendant in any State with which the

18  defendant has 'certain minimum contacts . . . such that the maintenance of the suit does

19  not offend 'traditional notions of fair play and substantial justice.'"  Calder v. Jones, 465

20  U.S. 783, 788 (1984).  "In judging minimum contacts, a court properly focuses on 'the

21  relationship among the defendant, the forum, and the litigation.'"  Id.  "Where, as here,

22  there is no applicable federal statute governing personal jurisdiction, the district court

23  applies the law of the state in which the district court sits."  Yahoo! Inc. v. La Ligue

24  Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).

25  California's long arm statute provides that a court may "exercise jurisdiction on any basis

26  that is not inconsistent with the Constitution of this state or of the United States."  Cal.

27  Code Civ. Proc. § 410.10; see also Hall v. LaRonde, 56 Cal.App.4th 1342, 1344 (1997)

28  ("We hold that the use of electronic mail and the telephone by a party in another state

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**

may establish sufficient minimum contacts with California to support personal jurisdiction."). Thus, because "California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Yahoo!, 433 F.3d at 1205.  While general and specific jurisdiction are possible bases, Plaintiff does not contend that general personal jurisdiction exists.

Specific jurisdiction in the Ninth Circuit is analyzed under a three-prong test:

(1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix Photo v. Brand Techs., 647 F.3d 1218, 1227–28 (9th Cir. 2011) (emphasis in original).  Plaintiff bears the burden of proof as to the first two prongs.  Id. at 1228. However, once Plaintiff meets her burden, "the burden then shifts to [Mr. Cohen] to set forth a '*compelling case*' that the exercise of jurisdiction would not be reasonable."  Id. (emphasis added).

Mr. Cohen does not submit any additional evidence in support of his Motion and relies upon the argument that the factual allegations in the Complaint are legally insufficient to establish personal jurisdiction.  Mr. Cohen does not seek to contradict or rebut the allegations.[3]  Thus, in order to meet her burden, Plaintiff need only make a prima facie showing of personal jurisdiction.  Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002).  "[U]ncontroverted allegations in the complaint must be taken as true."  Id.  However, to the extent that there are "[c]onflicts between parties over statements contained in affidavits" they "must be resolved in the plaintiff's favor."  Id.

Here, Plaintiff meets her burden and Mr. Cohen fails to meet his burden to as to

---

[3] Mr. Cohen does argue that the allegations are conclusory.  However, this argument proceeds simply by taking allegations out of context and ignoring the detailed allegations regarding the communications directed by Mr. Cohen to California as set forth above.

1   reasonableness.  The Motion should thus be denied.

2   **C.    The Text Messages and Telephone Calls that Form the Basis of**
3   **         the Claims Were Purposefully Directed to California.**

4        Jurisdiction exists because Mr. Cohen purposefully directed the text messages and

5   other communications at the heart of this action to Mr. Davidson, Plaintiff's attorney and

6   agent, in California.

7        "The first prong of the specific jurisdiction test refers to both purposeful direction

8   and purposeful availment." Mavrix, 647 F.3d at 1228.  However, as the Ninth Circuit has

9   explained, "in cases involving tortious conduct," like this one and as opposed to contract

10  based claims, "we most often employ a purposeful direction analysis." Id. That analysis

11  "focuses on the forum in which the defendant's actions *were felt*, whether or not the

12  actions themselves occurred within the forum." Yahoo!, 433 F.3d at 1206 (emphasis

13  added).  "By contrast, in contract cases, we typically inquire whether a defendant

14  "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a]

15  transaction" in the forum, focusing on activities such as delivering goods or executing a

16  contract." Id. (alterations in original).  The "effects test" that is employed in a tort action

17  like this one generally "requires that 'the defendant allegedly must have (1) committed an

18  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant

19  knows is likely to be suffered in the forum state.'" Mavrix, 647 F.3d at 1228.  This test

20  has its origin in the Supreme Court's decision in Calder v. Jones, 465 U.S. at 788.  See

21  Mavrix, 647 F.3d at 1206 ("In this circuit, we construe *Calder* to impose three

22  requirements…").

23       As discussed below, Plaintiff can establish that each of these requirements are met.

24  Mr. Cohen's Motion should therefore be denied.

25  **1.    Mr. Cohen Engaged In Intentional Acts Directed to California.**

26       Plaintiff alleges that Mr. Cohen acted intentionally by purposely directing

27  communications, including text messages and phone calls, to Mr. Davidson in California.

28  Moreover, the cause of action at issue as to Mr. Cohen, aiding and abetting a breach of
    fiduciary duty, constitutes intentional conduct.  Liability for aiding and abetting breach of

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)**
**MOTION TO DISMISS**

1    fiduciary duty is "imposed on one who aids and abets the commission of an intentional
2    tort if the person . . . knows the other's conduct constitutes a breach of duty and gives
3    substantial assistance or encouragement to the other to so act." <u>Am. Master Lease LLC</u>
4    <u>v. Idanta Partners, Ltd.</u>, 225 Cal.App.4th 1451, 1475 (2014).  Liability "depends on proof
5    the defendant had actual knowledge of the specific primary wrong the defendant
6    substantially assisted."  <u>Id.</u>  Mr. Cohen concedes that for the jurisdictional analysis,
7    "purposely placing phone calls and sending text messages to Davidson amounts to an
8    'intentional act'…"  [Dkt. No. 24 at 5:25-26.]  Accordingly, this element is met.  <u>See</u>
9    <u>Dole</u>, 303 F.3d at 1111 ("Because it is clear that Dole has sufficiently alleged that Watts
10   and Boenneken acted intentionally, we skip to the 'express aiming' requirement.").

                    **2.      Mr. Cohen's Conduct Was Expressly Aimed at the Forum State.**

12          Here, Mr. Cohen directed his communications to Mr. Davidson, Plaintiff's agent
13   and attorney at the time, in California.  Mr. Cohen's communications to Mr. Davidson,
14   and vice versa, form the basis of the claims in this action for breach of fiduciary duty and
15   aiding and abetting breach of fiduciary duty.  Mr. Cohen's communications were thus
16   aimed at the forum state of California and are a proper basis to find personal jurisdiction.

17          Contrary to Mr. Cohen's contention, communications directed to the forum state
18   can and do frequently form a proper basis for establishing personal jurisdiction.  <u>See</u>,
19   <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000)
20   (single letter was sufficient to establish personal jurisdiction in California); <u>Brainerd v.</u>
21   <u>Governors of the Univ. of Alberta</u>, 873 F.2d 1257, 1259 (9th Cir. 1989) (telephonic
22   communications and a single letter aimed at the forum were sufficient to establish
23   specific jurisdiction.).  For example, in <u>Brainerd</u>, the Ninth Circuit concluded that the
24   defendant intentionally directed his activities towards the forum on the basis of two
25   telephone calls and one letter in spite of the fact that the defendant "was not engaged in a
26   commercial enterprise, and does not otherwise conduct business in Arizona."  873 F.3d at
27   1259.  The Court noted that it was "difficult to conclude that [the defendant] has enjoyed
28   the benefits or invoked the protection of the forum's laws."  <u>Id.</u>  Nevertheless, because

1   the claims arose out of the communications directed to the forum, the Court reversed the

2   district court's order dismissing for lack of personal jurisdiction.  Id. at 1260-61.

3       The Ninth Circuit's decision in Dole Food v. Watts, further establishes the

4   appropriateness of finding personal jurisdiction based on Mr. Cohen's communications

5   and actions aimed at California.  In Dole the allegations centered on a scheme to defraud,

6   the "centerpiece of the scheme was a plan, proposed by [the defendants], to change

7   Dole's European distribution approach from a 'cost and freight' system to a 'landed duty

8   paid' ('LDP') system."  303 F.3d at 1109.  The plaintiff alleged in connection with the

9   dispute and the existence of personal jurisdiction in California that the defendants

10  "communicated frequently with management in Dole's California's offices via telephone,

11  fax, and mail about the design and implementation of the LDP system."  Id.  The Ninth

12  Circuit concluded that the defendants' actions were expressly aimed at the forum state

13  and that personal jurisdiction was appropriate because the defendants "knew that Dole's

14  principal place of business was in California, knew that the decisionmakers for Dole were

15  located in California, and communicated directly with those California decisionmakers."

16  Id. at 1112.  Moreover, these communications were made in order to "induce them to

17  implement a new importing system, and, as a consequence, to enter into significant and

18  detrimental contractual arrangements."  Id.  Accordingly, the exercise of personal

19  jurisdiction based on these communications was proper and the Court reversed the district

20  court's conclusion to the contrary.  Id. at 1120.

21      This conclusion is in accord with the law in general and multiple other circuits

22  have found similarly.  For example, the Fifth Circuit's decision in Wien Air Alaska v.

23  Brandt is instructive.  In that case, the plaintiff asserted causes of action against its

24  attorney, including breach of fiduciary duty, and the only contacts with the forum state

25  included "letters, faxes, and phone calls to Texas by [the attorney] whose contents

26  contained fraudulent misrepresentations and promises and whose contents failed to

27  disclose material information."  Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th

28  Cir. 1999).  The Fifth Circuit noted that it was an "inescapable fact of modern

commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." Id. at 213.  The Fifth Circuit found these contacts sufficient to establish specific personal jurisdiction because "when the claim arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state." Id.   The Court further distinguished cases finding communications alone insufficient on the grounds that in those actions "the communications with the forum did not actually give rise to a cause of action" and "merely solicited business from the forum, negotiated a contract, formed an initial attorney-client relationship, or involved services not alleged to form the basis of the complaint." Id.   Accordingly, the Fifth Circuit reversed the district court's decision dismissing for lack of personal jurisdiction. Id. at 216; see also Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992) (personal jurisdiction proper over an attorney on the basis of telephone calls and letters coupled with attendance at a single meeting).

The Sixth Circuit's decision in Schneider v. Hardesty is similarly instructive. There, the action centered on the allegations that the defendant, a resident of Utah, solicited the plaintiff, a resident of Ohio, to participate in a fraudulent investment scheme. 669 F.3d 693, 695 (6th Cir. 2012).  For purposes of the jurisdictional analysis, two letters written but not personally sent by the defendant to the plaintiff in Ohio were the basis for asserting personal jurisdiction. Id. at 696.  The plaintiff "alleged that the two letters written by [the defendant] contained false and misleading statements" that were used to solicit participation in the fraudulent scheme. Id.  In deciding the issue, the Sixth Circuit noted that it has "held previously that purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications 'form the bases for the action.'" Id. at 702.  Thus, the Sixth Circuit found that the letters constituted purposeful availment sufficient to support personal jurisdiction even though

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)**
**MOTION TO DISMISS**

the defendant did not personally mail the letters himself because the defendant "knew, or at least should have known, that the letters were bound for an investor in Ohio." Id. at 703. The Sixth Circuit reversed the district court's conclusion to the contrary. Id. at 704.

The Seventh Circuit's decision in Felland v. Clifton likewise addresses communications to a forum state as a basis for personal jurisdiction and considered specifically whether the Arizona resident defendant's "multiple communications to the [the plaintiff] in Wisconsin are properly characterized as actions 'purposefully directed' at the forum state with regard to the alleged fraudulent scheme." 682 F.3d 665, 673 (7th Cir. 2012). The Seventh Circuit concluded that the defendant's "communications to [the plaintiff's] Wisconsin address were part of a comprehensive and ongoing scheme to perpetuate this initial fraud" and that the misrepresentations communicated to the plaintiff in Wisconsin "were 'expressly aimed' at Wisconsin; under the doctrine established in *Burger King* and *Calder*…" Id. at 675-676. Accordingly, the Seventh Circuit reversed the district court's determination otherwise. Id. at 679.

The same conclusion should be reached here. The Complaint sets forth numerous text messages sent by Mr. Cohen to Mr. Davidson in California as well as telephonic communications that form the basis of the cause of action asserted against Mr. Cohen. [Dkt. No. 1-1 ¶¶ 16-53; Avenatti Decl. Ex. 1.] Mr. Davidson is a California resident, his law practice is located in Beverly Hills, and the phone number used by Mr. Cohen is a Los Angeles based number with a "(310)" area code. [Dkt. No. 1-1 ¶¶7-8; Dkt. No. 7 ¶1, 1:1-4; Avenatti Decl. Ex. 1.] Mr. Davidson is not an unrelated third party, but both a Defendant in this action and Plaintiff's attorney acting as such in California. [Dkt. No. 1-1 ¶8; Dkt. No. 5 ¶8.] Thus, Mr. Cohen's conduct was aimed at Mr. Davidson in California. Mr. Cohen also initiated arbitration proceedings in California against Plaintiff. [Id. ¶38, Avenatti Decl. ¶4.] The breach of fiduciary duty here at issue both for the direct claim against Mr. Davidson and for the aiding and abetting claim against Mr. Cohen occurred in California where Mr. Davidson is located. Mr. Cohen intentionally aided and abetted this breach, knowing that Mr. Davidson was Plaintiff's attorney and

that his conduct breached his duties to her, and that aid was directed to California and accomplished in California.   [Dkt. No. 1-1 ¶¶73-81.]   These facts are sufficient to establish that the conduct was expressly aimed at California.

Indeed, as set forth above, the Ninth Circuit found in <u>Brainerd</u> that the defendant intentionally directed his activities towards the forum on the basis of two telephone calls and one letter in spite of the fact that the defendant "was not engaged in a commercial enterprise, and does not otherwise conduct business in Arizona."   873 F.3d at 1259. Similarly, the <u>Dole</u> decision relied on the fact that the defendants "knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers." 303 F.3d at 1112.   The same holds true here with respect to Mr. Cohen's communications with Mr. Davidson.[4]

Mr. Cohen principally relies on <u>Peterson v. Kennedy</u> for the proposition that "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"   771 F.2d 1244, 1262 (9th Cir. 1985).   As the above cited authority indicates – all of which post-date <u>Peterson</u> – this is not an accurate statement of the current state of the law.   Rather, the "effects test" that is employed in a tort action like this one governs. <u>Mavrix</u>, 647 F.3d at 1228.   This test has its origin in the Supreme Court's decision in <u>Calder v. Jones</u>, 465 U.S. at 788.   <u>See</u> <u>Mavrix</u>, 647 F.3d at 1206.   By contrast, the Court in <u>Peterson</u> relies on a test articulated in <u>Data Disc v. Systems Technology Associates</u>, 557 F.2d 1280, 1287 (9th Cir. 1977).   That decision predates <u>Calder</u> by roughly seven (7) years.   Thus, as other courts have noted, although <u>Peterson</u> has not been overruled, "many Ninth Circuit personal jurisdiction cases involving certain types of tort claims . . . apply the more liberal 'effects test.'"   <u>Cummings v. W. Trial Lawyers Ass'n</u>, 133 F. Supp. 2d 1144, 1152 (D. Ariz. 2001); <u>see also</u> <u>Chapman v. Krutonog</u>, 256 F.R.D. 645, 650 (D.

---

[4] Additionally, it is worth noting that Mr. Davidson's own claims against Mr. Cohen establish that the conduct was aimed at California.   [<u>See</u> Dkt. No. 7 ¶¶1-18.]

Haw. 2009) (same).

Accordingly, to the extent that <u>Peterson</u> is good law, it simply does not apply to tort based actions like this one and, by itself, cannot be taken to mean that Mr. Cohen's conduct is insufficient to amount to purposefully directed activity within the meaning of the law.  See <u>Meade Instruments Corp. v. Reddwarf Starware LLC</u>, No. SA CV 98-240-GLT (ANx), 1998 WL 377041, at *2 (C.D. Cal. May 11, 1998) (noting the case law regarding the insufficiency of communications is "inconsistent with the current trend in jurisdictional analysis.").    Indeed, as the Fifth Circuit noted, decisions finding communications alone insufficient do so because "the communications with the forum did not actually give rise to a cause of action" like they do here.  <u>Wien Air Alaska</u>, 195 F.3d at 213.  That is not the case here where the cause of action alleged arises directly from the communications.

Accordingly, Mr. Cohen's argument is thus premised on disregarding the law regarding express aiming in the context of communications.   The clear weight of authority in the Ninth Circuit and elsewhere establishes that communications directed to the forum state constitute express aiming.   Plaintiff can and does establish that Mr. Cohen's communications to California are sufficient to establish personal jurisdiction.

### 3. Mr. Cohen's Conduct Caused Harm in the Forum.

Mr. Cohen's conduct caused harm in California because Mr. Cohen aided and abetted the breach of Plaintiff's attorney's fiduciary duty in California.  This conduct thus caused jurisdictionally significant harm to Plaintiff in California.

Mr. Cohen's argument to the contrary is focused on the fact that Plaintiff is not a resident of California and, as Mr. Cohen argues, could not have been harmed in California.  This is simply not true as a matter of fact or law.  Indeed, the law is clear that Plaintiff's residence is not by itself dispositive of any issue pertaining to jurisdiction. Rather, as the Supreme Court has made clear, "plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts."   <u>Keeton v. Hustler Magazine</u>, 465 U.S. 770, 780

1    (1984).  The Ninth Circuit has further clarified "that the 'brunt' of the harm need not be

2    suffered in the forum state" in order for jurisdictionally significant harm to have been

3    caused in the forum state.   Yahoo!, 433 F.3d at 1207.   On the contrary, if "a

4    jurisdictionally sufficient amount of harm is suffered in the forum state, *it does not matter*

5    *that even more harm might have been suffered in another state*."  Id. (emphasis added).

6         It is thus clear that the harm at issue is not confined to a single forum and

7    "[j]urisdictionally sufficient harm may be suffered in multiple forums."  Mavrix, 647

8    F.3d at 1231.  Jurisdictionally significant harm is not limited to the location, or domicile,

9    of the party harmed.  Rather, as the Ninth Circuit has found, the harm can be suffered

10   "both where the bad acts occurred" and, in the case of a corporation, "where the

11   corporation has its principal place of business" or residence.  Dole, 303 F.3d at 1113.

12   The "existence of jurisdiction in one forum does not necessarily negate the existence of

13   jurisdiction in another forum."  Id.  For example, in Mavrix, the plaintiff was a Florida

14   corporation with its principal place of business in Miami.  647 F.3d at 1221.  However,

15   the Ninth Circuit concluded that the harm in question occurred both in Florida and

16   California such that the exercise of personal jurisdiction in California was justified.  Id. at

17   1231-32.   In Keeton, the Supreme Court found jurisdiction despite the fact that the

18   plaintiff, an individual, was not a resident and that it was "undoubtedly true that the bulk

19   of the harm done to petitioner occurred outside [the forum]."  465 U.S. at 780.

20        Here, Plaintiff was harmed in California by the breaches of her attorney's, Mr.

21   Davidson's, fiduciary duties that were aided and abetted by Mr. Cohen.  Mr. Davidson's

22   breaches took place in California where Mr. Davidson's residence and business are

23   located.  [Dkt. No. 1-1 ¶¶7-8; Dkt. No. 7 ¶1, 1:1-4.]   Mr. Cohen also initiated arbitration

24   proceedings against Plaintiff in California.  [Id. ¶38; Avenatti Decl. ¶4.]  It is immaterial

25   that Plaintiff is not a California resident or that even the "bulk" of the harm done may

26   have been felt outside of California.  Mr. Cohen's conduct caused harm in California.

27        **D.     Plaintiff's Claims Arise Out Of Mr. Cohen's Forum Related Activities.**

28        The allegations against Mr. Cohen in this action arise directly out of his forum

---

-15-

1  related actions.

2       "The second requirement for specific jurisdiction is that the contacts constituting

3  purposeful availment must be the ones that give rise to the current suit."  Bancroft &

4  Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).  Courts in the

5  Ninth Circuit "measure this requirement in terms of 'but for' causation."  Id.  This

6  requirement is easily met in this action.

7       Here, the text messages directed to Mr. Davidson in California sent by Mr. Cohen

8  form the basis for Plaintiff's claims against both Mr. Davidson and Mr. Cohen.  [Dkt. No.

9  1-1 at ¶¶15-53 (detailing communications and conduct between Mr. Cohen and Mr.

10  Davidson).]  But for these contacts, there would be no claim in this action.  Indeed, as

11  alleged in the Complaint, it was through these communications directed to California and

12  Mr. Davidson, as Plaintiff's attorney and agent at the time, that Mr. Cohen aided and

13  abetted Mr. Davidson's breach by providing substantial assistance to Mr. Davidson and

14  in fact engaged in concerted activity with Mr. Davidson by attempting to arrange for the

15  media appearance of Plaintiff on Sean Hannity's television show on *Fox News* to benefit

16  Mr. Trump, not Ms. Clifford.  [Dkt. No. 1-1 at ¶77.]  As alleged, "Mr. Cohen knew that

17  this conduct was likely not in Ms. Clifford's best interest and thus constituted a breach of

18  fiduciary duty on Mr. Davidson's part."  [Id. at ¶78.]  Nevertheless, and in spite of this

19  Mr. Cohen provided substantial assistance and attempted to arrange the appearance.  [Id.]

20  Mr. Cohen further communicated with Mr. Davidson and encouraged Mr. Davidson to

21  disclose confidential information pertaining to Plaintiff's legal strategy – information

22  that, as an attorney, he knew Mr. Davidson should keep confidential.  [Id. at ¶78.]  Mr.

23  Cohen then proceeded to record this information and retain the recordings, all as part of

24  his substantial assistance aimed at aiding and abetting Mr. Davidson's breaches of

25  fiduciary duty and then Mr. Cohen used this information for his own benefit and Mr.

26  Trump's benefit by attempting to initiate an arbitration proceeding against Plaintiff and

27  force her to remain silent.  [Id. at ¶¶79-80.]  Mr. Cohen further used this information

28  gained through the communications with Mr. Davidson in California in an effort to "get

1    out in front" of the story.  [Id. at ¶80.]

2    　　　As in the Dole action, it is "obvious" that claims against Mr. Cohen "arise directly

3    out of [his] contacts with the forum."  303 F.3d at 1114.  Mr. Cohen's argument against

4    this factor amounts to the proposition that because Mr. Cohen "did not perform acts

5    expressly aimed at the forum state, the claims against Cohen do not arise out of forum-

6    related activities."  [Dkt. No. 24 at 8:6-7.]  Mr. Cohen does not advance an alternate

7    argument that, even if he did engage in forum related activities, the claims do not arise

8    from them.  [Id.]  Thus, his argument fails for the same reasons discussed above.

9    　　　Plaintiff's claims arise out of Mr. Cohen's forum related activities and the exercise

10   of specific jurisdiction on the basis of these activities is proper.

11   　　　**E.　　The Exercise of Jurisdiction Over Mr. Cohen Is Reasonable.**

12   　　　Here, the exercise of personal jurisdiction over Mr. Cohen is reasonable and Mr.

13   Cohen does not satisfy his heavy burden to establish otherwise.  Indeed, as argued below,

14   each of the seven factors the Court should consider to resolve this issue either

15   demonstrate reasonableness or are, at worst, neutral.  Accordingly, Mr. Cohen does not

16   meet his heavy burden to establish that the exercise of jurisdiction is unreasonable.

17   　　　"Once it has been decided that a defendant purposefully established minimum

18   contacts with a forum," the burden shifts to the party opposing jurisdiction to establish

19   that the exercise of jurisdiction would be unreasonable.  Dole, 303 F.3d at 1114.  Cases in

20   the Ninth Circuit "emphasize the *heavy burden* on both domestic and foreign defendants

21   in proving a '*compelling case*' of unreasonableness to defeat jurisdiction."  Id. at 1117

22   (emphasis added).  In order to assess reasonableness and whether a compelling case has

23   been made, courts consider the following factors:

24   　　　　(1) the extent of the defendants' purposeful injection into the forum state's
     　　　　affairs; (2) the burden on the defendant of defending in the forum; (3) the extent
25   　　　　of the conflict with the sovereignty of the defendant's state; (4) the forum state's
     　　　　interest in adjudicating the dispute; (5) the most efficient judicial resolution of the
26   　　　　controversy; (6) the importance of the forum to the plaintiff's interest in
     　　　　convenient and effective relief; and (7) the existence of an alternative forum.
27

28   CollegeSource, Inc. v. AcademyOne, 653 F.3d 1066, 1079 (9th Cir. 2011)

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)**
**MOTION TO DISMISS**

1    Mr. Cohen does not acknowledge that the burden is on him to establish the

2  unreasonableness of jurisdiction let alone make the compelling case that he is required to

3  make.  Indeed, Mr. Cohen concedes that as to Plaintiff four out of seven of the factors are

4  "neutral" and only three weigh in favor of his argument.  [Dkt. No.  24 at 10:11-13.]  It is

5  not at all clear that this argument amounts to a "compelling case" of unreasonableness.

6  <u>Dole</u>, 303 F.3d at 1117.  Nevertheless, the Court should not take Mr. Cohen's argument

7  at face value and an examination of each of the factors reveals that every single one

8  weighs in favor of exercising personal jurisdiction over Mr. Cohen in this action or is, at

9  worst, neutral.  Mr. Cohen thus fails to carry his burden of making a "compelling case" of

10 the unreasonableness of jurisdiction.

11   *First*, as to purposeful injection, Mr. Cohen simply reiterates his argument that he

12 did not direct his activities towards California and asserts that purposeful injection is

13 "simply non-existent."  [Dkt. No. 24 at 8:27.]  Mr. Cohen offers no additional argument

14 that even if he expressly aimed his conduct to the forum, the Court should not find

15 purposeful injection.  [<u>Id.</u>]  Accordingly, his argument should be rejected for the same

16 reasons discussed above as to express aiming.  See <u>CollegeSource</u>, 653 F.3d at 1080

17 (finding purposeful injection because the defendant simply "reiterates its unsuccessful

18 arguments that it did not expressly aim any acts at California…").

19   *Second*, Mr. Cohen acknowledges that the "burden on Cohen to defend himself in

20 California would admittedly be minimal."  [Dkt. No. 24 at 9:1-2.]  Indeed, unless the

21 burden is "so great as to constitute a deprivation of due process," the burden "will not

22 overcome clear justifications for the exercise of jurisdiction."  <u>Panavision Int'l, L.P. v.</u>

23 <u>Toeppen</u>, 141 F.3d 1316, 1323 (9th Cir. 1998).  This factor is not simply neutral as Mr.

24 Cohen claims; it weighs against him and in favor of exercising jurisdiction.

25   *Third*, as to sovereignty, Mr. Cohen argues this factor should be given little weight

26 and is neutral.  [Dkt. No. 24 at 9:5-6.]  Mr. Cohen offers no argument that the "exercise

27 of jurisdiction in California would conflict with the sovereignty" of New York and as

28 such the factor favors the exercise of jurisdiction.  <u>Panavision</u>, 141 F.3d at 1323.

1    *Fourth*, Mr. Cohen admits that California "maintains a strong interest in providing

2    reparations for its injured residents."  [Dkt. No. 24 at 9:14-15 (citing Panavision, 141

3    F.3d at 1323).]  Mr. Cohen contends, however, that because Plaintiff is not a resident of

4    California, this interest is negated.  However, Mr. Cohen also acknowledges that as to

5    Mr. Davidson's claims, California does have a strong interest.  [Id. at 9:19-20.]  Mr.

6    Cohen's argument ignores the harm Plaintiff has suffered in California and discussed

7    above.  Mr. Cohen aided and abetted Mr. Davidson's breach of fiduciary duties to

8    Plaintiff.    This breach occurred in California and Plaintiff was harmed by it.

9    Accordingly, California also has a strong interest as to Plaintiff's claims for the same

10   reason it does as to Mr. Davidson's.  See Dole, 303 F.3d at 1116 (noting that the fact that

11   the party is present in multiple states and countries does not alter the conclusion that

12   California has an interest in the action.).  This factor weighs in favor of jurisdiction.

13       *Fifth*, Mr. Cohen again acknowledges that the factor focusing on efficient judicial

14   resolution does not weigh against jurisdiction, claiming instead that it is neutral.  [Dkt.

15   No. 24 at 9:21-24.]  This factor "focuses on the location of the evidence and witnesses."

16   Panavision, 141 F.3d at 1323.  Certainly, Mr. Davidson, a key witness, is present in this

17   district.  Mr. Cohen does not argue that there is another forum with greater ease of access

18   to evidence and witnesses.  Accordingly, this factor weighs in favor of jurisdiction.

19       *Sixth*, Mr. Cohen correctly points out that courts in the Ninth Circuit do not give

20   much weight to the plaintiff's inconvenience.  Dole, 303 F.3d at 1116; Panavision, 141

21   F.3d at 1324.  This factor is thus, at worst, neutral – as Mr. Cohen concedes.  [Dkt. No.

22   24 at 9:25-27.]

23       *Seventh*, and finally, "[w]hether another reasonable forum exists becomes an issue

24   only when the forum state is shown to be unreasonable."  CollegeSource, 653 F.3d at

25   1080.  Mr. Cohen has not made this showing.  However, it is important to emphasize that

26   Mr. Cohen is incorrect that New York is a suitable alternative forum.  If Mr. Cohen's

27   view of personal jurisdiction holds sway then there may be no basis for a New York court

28   to exercise personal jurisdiction over Mr. Davidson.  As a consequence, there is no other

1  court in which Plaintiff can resolve her claims against all the parties at once.  As the

2  Ninth Circuit in <u>Dole</u> concluded, when there "might not be any single alternative forum

3  that has subject matter and personal jurisdiction over all parties and issues" this factor

4  weighs in favor of the reasonableness of the exercise of jurisdiction.  303 F.3d at 1116.

5  The same conclusion should be reached here, as to hold otherwise would likely require

6  piecemeal and inefficient litigation as well as risk inconsistent results.

7      In sum, none of the seven factors discussed weigh strongly against the exercise of

8  personal jurisdiction.  At worst, the factor regarding Plaintiff's convenience is neutral.  In

9  order to establish the unreasonableness of the exercise of jurisdiction, Mr. Cohen bears

10  the "heavy burden" of proving a "'compelling case' of unreasonableness." <u>Dole</u>, 303

11  F.3d at 1114.  Mr. Cohen fails to meet that burden.  Accordingly, the exercise of

12  jurisdiction is proper and Mr. Cohen's Motion should be denied.

13      **F.      In the Alternative, the Court Should Order Jurisdictional Discovery**

14      Finally, insofar as the Court remains unconvinced regarding the existence of

15  personal jurisdiction, "it is clear that a court may allow discovery to aid in determining

16  whether it has in personam or subject matter jurisdiction." <u>Wells Fargo & Co. v. Wells</u>

17  <u>Fargo Exp. Co.</u>, 556 F.2d 406, 430 n. 24 (9th Cir. 1977).  To the extent that there is any

18  doubt regarding any of the facts, it should be resolved in Plaintiff's favor. <u>Dole</u>, 303 F.3d

19  at 1108.  However, Plaintiff also requests the opportunity to conduct jurisdictional

20  discovery to the extent that the Court is uncertain of the existence of personal

21  jurisdiction. [<u>See</u> Avenatti Decl. ¶¶ 5-6.]

22  **IV.   CONCLUSION**

23      For the reasons stated above, Plaintiff respectfully requests the Court DENY Mr.

24  Cohen's Motion to Dismiss.

25  DATED:  July 16, 2018                    AVENATTI & ASSOCIATES, APC

26

27                                            /s/ Michael J. Avenatti
                                           MICHAEL J. AVENATTI
28                                           Attorneys for Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S RULE 12(b)(2)
MOTION TO DISMISS**