1   AVENATTI & ASSOCIATES, APC
2   Michael J. Avenatti, CA State Bar No. 206929
    Ahmed Ibrahim, CA State Bar No. 238739
3   520 Newport Center Drive, Suite 1400
    Newport Beach, CA 92660
4   Telephone:  949.706.7000
    Facsimile:   949.706.7050
5

6   Attorneys for Plaintiff Stephanie Clifford
7   a.k.a. Stormy Daniels

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS, an individual, | CASE NO.:  2:18-cv-05052-SJO-FFM Assigned for All Purposes to the Honorable S. James Otero |
| Plaintiff, | **PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE (CAL. CODE CIV. PROC. § 425.16) OR, ALTERNATIVELY, TO DISMISS (FRCP 12(b)(6)) PLAINTIFF'S AIDING AND ABETTING CLAIM AGAINST COHEN** |
| vs. | |
| KEITH M. DAVIDSON, an individual, MICHAEL COHEN, an individual, and DOES 1 THROUGH 10, inclusive | |
| Defendants. | **Hearing Date:  August 6, 2018 Hearing Time:  10:00 a.m. Location:  Courtroom 10C** |
| | **California Superior Court Action Filed:  June 6, 2018** |
| AND RELATED COUNTER-CLAIMS AND CROSS CLAIMS. | |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

III.  ARGUMENT ......................................................................................... 4

      A.   Cohen's Anti-SLAPP Motion Should Be Denied Because It
           is Treated as a Motion for Summary Judgment in Federal
           Court. .......................................................................................... 4

      B.   Cohen's Rule 12(b)(6) Motion Should Be Summarily
           Denied Because It Is Untimely and Relies on Factual
           Matters Outside the Pleadings. .................................................. 5

      C.   New York Law, Not California Law Applies. ............................. 5

           1.   The Court Must Perform a Choice of Law Analysis to
                Determine Whether California's Anti-SLAPP Law
                Applies. ............................................................................. 5

           2.   New York Law Governs the Anti-SLAPP Motion. ........... 6

           3.   If California Anti-SLAPP Law Applies, Clifford Must
                be Afforded an Opportunity for Discovery. ...................... 8

      B.   Even if California anti-SLAPP Law Does Apply, Cohen's
           Motion Fails. ............................................................................... 9

           4.   Cohen's Activity that Forms the Basis of the Claims
                Against Him is Not Protected by the Anti-SLAPP
                Statute or Litigation Privilege. ..................................... 10

           5.   Plaintiff's Claims are Meritorious. ................................ 17

      C.   If the Court Makes a Ruling Based on Rule 12(b)(6), the
           Litigation Privilege Defense is Unavailable to Cohen. ........... 19

      D.   If Cohen's Motion is Granted, the Court Should Grant
           Leave to Amend. ....................................................................... 20

IV.   CONCLUSION ................................................................................... 20

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

# TABLE OF AUTHORITIES

## CASES

Action Apartment Ass'n, Inc. v. City of Santa Monica,
   41 Cal. 4th 1232 (2007) ................................................................ 15

Aeroplate Corp. v. Arch Ins. Co.,
   No. CVF061099AWISMS, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006) ................... 8

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) .................................................................... 8

ASARCO, LLC v. Union Pac. R. Co.,
   765 F.3d 999 (9th Cir. 2014) ..................................................... 5, 20

Block v. First Blood Assocs.,
   691 F. Supp. 685 (S.D.N.Y. 1988) ...................................................... 7

Brill Media Co., LLC v. TCW Group, Inc.,
   132 Cal. App. 4th 324 (2005) .......................................................... 9

Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.,
   448 F. Supp. 2d 1172 (C.D. Cal. 2006) ................................................. 4

Century 21 Chamberlain & Assocs. v. Haberman,
   173 Cal. App. 4th 1 (2009) ............................................. 2, 5, 17, 18

Clark v. Mazgani,
   170 Cal. App. 4th 1281 (2009) ....................................................... 15

Competitive Techs. v. Fujitsu Ltd.,
   286 F. Supp. 2d 1118 (N.D. Cal. 2003) ................................................. 7

Condit v. Dunne,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ................................................... 7

Dawe v. Corr. USA,
   No. CIVS-07-1790 LKK/EFB, 2010 WL 682321 (E.D. Cal. Feb. 24, 2010) ............. 10

-iii-

Do v. Hollins Law, P.C.,
   No. 3:13-CV-01322-JSW, 2013 WL 4013659 (N.D. Cal. Aug. 5, 2013)...................10

Edwards v. Centex Real Estate Corp.,
   53 Cal. App. 4th 15 (1997) ...........................................................................10, 15, 16

Francis v. Wynn Las Vegas,
   557 F. App'x 662 (9th Cir. 2014) ...................................................................................6

Fresno Motors, LLC v. Mercedes Benz USA, LLC,
   771 F.3d 1119 (9th Cir. 2014) ........................................................................................4

Gallanis-Politis v. Medina,
   152 Cal. App. 4th 600 (2007) ........................................................................................10

Gaynor v. Bulen,
   19 Cal. App. 5th 864 (Ct. App. 2018) ...................................................................11, 12

Haneline Pac. Properties, LLC v. May,
   167 Cal. App. 4th 311 (2008) ...............................................................................15, 16

Hurtado v. Superior Court,
   11 Cal. 3d 574 (1974) ......................................................................................................7

In re Episcopal Church Cases,
   45 Cal. 4th (2009) .........................................................................................................15

Lee v. City of Los Angeles,
   250 F.3d 668 (9th Cir. 2001) ..........................................................................................5

Lee v. W. Coast Life Ins.,
   688 F.3d 1004 (9th Cir. 2012) ......................................................................................19

Makaeff v. Trump Univ., LLC,
   736 F.3d 1180 (9th Cir. 2013) ........................................................................................6

Mirabito v. Liccardo,
   4 Cal. App. 4th 41 (1992)...............................................................................................19

Martinez v. Metabolife Internat., Inc.,
   113 Cal. App. 4th 181 (2003) .......................................................................................11

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

McGhee v. Arabian Am. Oil Co.,
    871 F.2d 1412 (9th Cir. 1989) ...................................................................7

Mero v. U.S. Figure Skating Ass'n,
    No. 05-CV-73069, 2006 WL 163529 (E.D. Mich. Jan. 20, 2006)................7

Metabolife Int'l, Inc. v. Wornick,
    264 F.3d 832 (9th Cir. 2001) ....................................................................8

Mission Beverage Co. v. Pabst Brewing Co., LLC,
    15 Cal. App. 5th 686 (Ct. App. 2017) ......................................................11

Noble v. Sears, Roebuck & Co.,
    33 Cal. App. 3d 654 (1973) .....................................................................19

Overstock.com, Inc. v. Gradient Analytics, Inc.,
    151 Cal. App. 4th 688 (2007) ....................................................................4

Park v. Bd. of Trustees of California State Univ.,
    2 Cal. 5th 1057 (2017) ......................................................................11, 12

Patton v. Cox,
    276 F.3d 493 (9th Cir. 2002) ....................................................................6

Paulsen v. CNF Inc.,
    559 F.3d 1061 (9th Cir. 2009) ...............................................................6, 7

Payoda, Inc. v. Photon Infotech, Inc.,
    No. 14-CV-04103-BLF, 2016 WL 1059515 (N.D. Cal. Mar. 17, 2016) ....7

Pennington v. Ryan,
    988 F.2d 121 (9th Cir. 1993) ....................................................................5

Reich v. Purcell,
    67 Cal. 2d 551 (1967) ..............................................................................8

Renewable Res. Coal., Inc. v. Pebble Mines Corp.,
    218 Cal. App. 4th 384 (2013) .....................................................11, 13, 14

Rogers v. Home Shopping Network, Inc.,
    57 F. Supp. 2d 973 (C.D. Cal. 1999) .....................................................4, 8

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

<u>Sarver v. Chartier,</u>
  813 F.3d 891 (9th Cir. 2016) ....................................................................... 6

<u>Scott v. Metabolife Internat., Inc.,</u>
  115 Cal. App. 4th 404 (2004) .................................................................... 12

<u>Soo Park v. Thompson,</u>
  851 F.3d 910 (9th Cir. 2017) ........................................................... 2, 3, 18

<u>Sorensen v. New Koosharem,</u>
  No. CV1501088RGKPJWX, 2016 WL 4925917 (C.D. Cal. Mar. 2, 2016) .............. 19

<u>Soukup v. Law Offices of Herbert Hafif,</u>
  39 Cal .4th 260 (2006) ................................................................................ 4

<u>Taus v. Loftus,</u>
  40 Cal.4th 683 (2007) ................................................................................. 9

<u>Verizon Delaware, Inc. v. Covad Commc'ns Co.,</u>
  377 F.3d 1081 (9th Cir. 2004) .................................................................. 20

<u>Z.F. v. Ripon Unified Sch. Dist.,</u>
  482 F. App'x 239 (9th Cir. 2012) ............................................................ 4, 8

**STATUTES**

Cal. Civ. Code § 3360 ................................................................................. 19

Cal. Civ. Proc. Code § 425.16 ..............................................1, 4, 6, 8, 9, 10, 11

N.Y. Civ. Rights Law § 76-a ....................................................................... 7

**RULES**

Fed. R. Civ. P. 12 ................................................................................*passim*

Fed. R. Civ. P. 15(a) ................................................................................. 20

Fed. R. Evid. 801(d)(2) ............................................................................. 14

-vi-

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

## I.    INTRODUCTION

Defendant Michael Cohen ("Cohen") has filed a special motion to strike Plaintiff Stephanie Clifford's ("Plaintiff" or "Clifford") aiding and abetting breach of fiduciary duty claim against him pursuant to California's anti-SLAPP statute.  Alternatively, Cohen seeks to dismiss the claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Cohen's anti-SLAPP motion must be summarily dismissed.  Cohen's motion must be denied for a multitude of reasons:

*First,* Cohen's motion must be denied on a variety of procedural grounds.  Among other reasons, the motion should be denied because Cohen has offered no evidence to support his motion—even though the Court must decide it under a summary judgment standard.  Clifford has not been given an opportunity to conduct discovery.  Further, Cohen's Rule 12(b)(6) motion is untimely because he has already filed an Answer.  It is also deficient because it relies on factual matters outside of the pleadings.

*Second*, the California anti-SLAPP law is treated as substantive law in federal court.  As substantive law, it is subject to a choice of law analysis.   Under California's governmental interest analysis, the Court must apply New York, not California, law because California has no interest in resolving Clifford's claim against Cohen, while New York has a strong interest because Cohen resides there.  Because New York's anti-SLAPP statute would not be applicable in this case, Cohen's anti-SLAPP motion must be denied without further analysis.

*Third*, even if the Court did find that California, rather than New York, anti-SLAPP law applied, California's anti-SLAPP law would be treated as a motion for summary judgment in federal court.  As a consequence, because discovery has not yet commenced in this case, Clifford would be entitled to discovery to obtain the evidence she needs to substantiate her claim against Cohen.  The Court therefore may not rule on the anti-SLAPP motion at this time.

*Fourth*, the gravamen of the Complaint does not pertain to a litigation-related action by Cohen.  Rather, it is the breach of fiduciary duty that resulted in Plaintiff's former

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

attorney, defendant Keith Davidson, assisting Cohen instead of acting in the interest of Plaintiff.   Therefore, the anti-SLAPP statute and litigation privilege defense are inapplicable here.

*Fifth*, Cohen's tortious actions could not have been performed in anticipation of litigation because they occurred before there would have been any reason to contemplate litigation.  Cohen has presented no evidence otherwise.

*Sixth*, Cohen cannot use the arbitration proceeding as the basis for applying the anti-SLAPP statute because "[a]rbitration is not a judicial proceeding—it is an alternative thereto." Century 21 Chamberlain & Assocs. v. Haberman, 173 Cal. App. 4th 1, 8 (2009).

*Seventh*, Cohen cannot argue for dismissal of this action because the Complaint contains information and belief allegations.  A plaintiff may plead "facts alleged upon information and belief where  the  facts  are  peculiarly  within  the  possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017).

*Finally*, Plaintiff will be able to recover damages in this action.  At a minimum, nominal damages, punitive damages, and attorneys' fees are recoverable.  Accordingly, for these reasons and those stated below, Cohen's Motion should be denied.

## II.   FACTUAL BACKGROUND

In 2011, Plaintiff was interviewed by the magazine *In Touch Weekly* regarding her relationship with Donald Trump ("Trump").  [Declaration of Stephanie Clifford ("Clifford Decl.") ¶3.]

Plaintiff was represented by defendant Keith Davidson ("Davidson") in connection with an October 2016 agreement (the "Settlement Agreement") for which Cohen acted as an attorney for Trump.  [Clifford Decl. ¶4; Dkt. No. 1-1 ¶11; Dkt. No. 19 ¶11.]

On the morning of January 17, 2018, Cohen became aware of an article published by *In Touch Weekly* regarding Clifford and President Trump.   [Dkt. No. 1-1 ¶16.] Believing this article to be harmful to his client, Cohen proceeded to enlist Davidson to

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

assist him in an attempt to use and manipulate Clifford in a manner designed to benefit Cohen and Trump.   Cohen arranged for Plaintiff to appear on *Fox News* on Sean Hannity's show to falsely deny the accuracy of the *In Touch Weekly* article.  [Dkt. No. 1-1 ¶¶19-35.[1]]  Davidson did not have Plaintiff's permission or authorization to engage in these discussions.  Once Cohen concluded that it was no longer in his own best interest, or those of his client, Cohen called off the appearance entirely and Davidson agreed without hesitation.  [Dkt. No. 1-1 ¶35.]  In other words, Davidson abdicated his role as an advocate and fiduciary of his client Clifford, and instead elected to advance the interests of Cohen and Trump at the expense of Plaintiff.  [Id.]

In February 2018 Plaintiff terminated her relationship with Davidson.  [Clifford Decl. ¶6]  Despite his on-going duty of loyalty to Plaintiff, including the obligation to maintain client confidences, and without Plaintiff's permission, Davidson secretly tipped Mr. Cohen off to Ms. Clifford's plan to publicly disclose her relationship with Trump.  [Dkt. No. 1-1 ¶¶36-37; Clifford Decl. ¶7.]  Armed with this information, and in an attempt to intimidate Plaintiff into silence, on or about February 27, 2018, Mr. Cohen initiated an arbitration proceeding against Plaintiff in order to obtain a temporary restraining order to silence Plaintiff and prevent her from publicly telling her story.  [Dkt. No. 1-1 ¶38.]

Again, in early March of 2018, Mr. Davidson once more secretly tipped off Mr. Cohen regarding Plaintiff's plans, this time after learning that Plaintiff was on the verge of filing a lawsuit against Mr. Cohen and Mr. Trump.  [Id. ¶39.]  Specifically, on or about March 1, 2018, Mr. Cohen and Mr. Davidson held a conference call that included one of the attorneys involved in initiating the arbitration proceeding against Plaintiff, Lawrence Rosen, during which time Plaintiff believes that Mr. Davidson first disclosed to Mr. Cohen that Plaintiff was planning to file a lawsuit against him and Mr. Trump the following week and that the lawsuit would publicly disclose the existence of Plaintiff's

---

[1] Copies of the text messages cited in the Complaint have been attached as Exhibit 1 to the concurrently filed Declaration of Michael J. Avenatti ("Avenatti Decl.").

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

prior relationship with Mr. Trump.  [Dkt. No. 1-1 ¶¶ 40-50.; Avenatti Decl. ¶¶2, 3, 4 ]

Clifford did not authorize Davidson to disclose this information.  [Clifford Decl. ¶7.]

## III.   ARGUMENT

### A.   Cohen's Anti-SLAPP Motion Should Be Denied Because It is Treated as a Motion for Summary Judgment in Federal Court.

"If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.  If a defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c) applies." Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999); see also Z.F. v. Ripon Unified Sch. Dist., 482 F. App'x 239, 240 (9th Cir. 2012) (if an anti-SLAPP motion "is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted"); Bulletin Displays, LLC v. Regency Outdoor Advert., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).

Here, Cohen is using his anti-SLAPP motion in a manner akin to a motion for summary judgment.  For example, he argues that "Clifford must present proof that Cohen had actual knowledge of the 'specific primary wrong.'"  [Dkt. No. 26-1 at 15.]  Therefore, the summary judgment standard apples, where "[t]he court views the evidence in the light most favorable to the non-moving party," "draws all justifiable inferences in favor of the non-moving party," and cannot grant summary judgment "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014); see also Overstock.com, Inc. v. Gradient Analytics, Inc., 151 Cal. App. 4th 688, 699–700 (2007) ("We do not weigh credibility, nor do we evaluate the weight of the evidence ... [W]e accept as true all evidence favorable to the plaintiff."); Soukup v. Law Offices of Herbert Hafif, 39 Cal .4th 260, 291 (2006) ("The plaintiff need only establish that his or her claim has 'minimal merit' to avoid being stricken as a SLAPP.").  "Summary judgment generally is

-4-

inappropriate when an issue of intent or knowledge is involved." <u>Pennington v. Ryan</u>, 988 F.2d 121 (9th Cir. 1993).

Because a summary judgment standard applies, Cohen's motion must be denied. Cohen has not proffered any evidence to support his motion. Nor has Plaintiff been given an opportunity to conduct discovery. This ends the inquiry.

## B.     Cohen's Rule 12(b)(6) Motion Should Be Summarily Denied Because It Is Untimely and Relies on Factual Matters Outside the Pleadings.

As a preliminary matter, the Court must summarily deny Cohen's Rule 12(b)(6) motion because he has already filed an answer. The motion is therefore untimely. <u>See</u> Fed. R. Civ. P. 12(b) ("A motion asserting any of [the 12(b)] defenses must be made before pleading if a responsive pleading is allowed.")

Moreover, when a court considers a Rule 12(b)(6) motion to dismiss, "[r]eview is limited to the complaint. All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to [p]laintiffs. Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001) (citations and quotations omitted). Here, however, Cohen's motion makes factual challenges. For example, he argues that "Plaintiff continues through her allegations to put forward the existence of facts that do not exist." [<u>Id.</u> at 15.] These arguments must be disregarded if the Court performs a 12(b)(6) analysis. "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." <u>ASARCO, LLC v. Union Pac. R. Co.</u>, 765 F.3d 999, 1004 (9th Cir. 2014).

## C.     New York Law, Not California Law, Applies.

### 1.     The Court Must Perform a Choice of Law Analysis to Determine Whether California's Anti-SLAPP Law Applies.

Cohen assumes, without any analysis, that California's anti-SLAPP law applies. However, it is a fundamental rule of federal litigation that "[w]hen a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling

-5-

substantive law." Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Therefore, if law is substantive, it is subject to a choice of law analysis. To the extent the anti-SLAPP statute applies at all, the Ninth Circuit has repeatedly stated that California's anti-SLAPP statute is treated as substantive, not procedural, law in federal courts. See Francis v. Wynn Las Vegas, 557 F. App'x 662, 664 (9th Cir. 2014) (performing choice of law analysis to determine which state's anti-SLAPP law to apply); Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1184 (9th Cir. 2013) ("Every circuit that has considered the issue has agreed with our conclusion in Newsham that anti-SLAPP statutes like California's confer substantive rights under Erie"). Therefore, a choice of law analysis is needed to determine whether the anti-SLAPP law applies. See Sarver v. Chartier, 813 F.3d 891, 897-900 (9th Cir. 2016) (engaging in extensive choice of law analysis regarding whether to apply California's anti-SLAPP statute in a case that had been transferred from New Jersey); Francis, 557 F. App'x at 664 (performing choice of law analysis to determine whether federal court sitting in California should apply California or Nevada anti-SLAPP law).

### 2. New York Law Governs the Anti-SLAPP Motion.

Cohen's anti-SLAPP motion applies California law. However, the law of New York, the state where Cohen resides [Dkt. No. 1 at 4], should govern the anti-SLAPP motion. California courts use the governmental interest choice of law analysis:

> To determine the correct choice of law, we apply a three-step analysis. First, we determine whether the two concerned states have different laws. Second, we consider whether each state has an interest in having its law applied to this case. Finally, if the laws are different and each state has an interest in having its own law applied, we apply the law of the state whose interests would be more impaired if its policy were subordinated to the policy of the other state.

Paulsen v. CNF Inc., 559 F.3d 1061, 1080 (9th Cir. 2009) (quotation omitted).

The first question, whether New York and California anti-SLAPP law differs, is simple. California's anti-SLAPP statute is very broad. See Cal. Civ. Proc. Code § 425.16. New York's statute is significantly narrower and only applies to actions related to

applying for permits, zoning changes, licenses, or similar entitlements from the government.  See N.Y. Civ. Rights Law § 76-a.  It is therefore indisputable that Clifford's claims against Cohen are outside of the scope of New York's anti-SLAPP statute.  Therefore, a conflict is present between the anti-SLAPP laws of the two states.

The Court must next consider the interests of New York and California.  See Paulsen, 559 F.3d at 1080.  Where no party resides in California, California's interest is very weak and the party seeking the application of another state's law "need only show some legitimate . . . interest."  McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1424–25 (9th Cir. 1989); see also Payoda, Inc. v. Photon Infotech, Inc., No. 14-CV-04103-BLF, 2016 WL 1059515, at *7 (N.D. Cal. Mar. 17, 2016) (performing governmental interest analysis in a defamation case and determining that Indian law would apply because "California has no interest in applying its laws to a case between a New York corporation and an Indian company"); Mero v. U.S. Figure Skating Ass'n, No. 05-CV-73069, 2006 WL 163529, at *6–7 (E.D. Mich. Jan. 20, 2006) (performing California governmental interest analysis and concluding the California anti-SLAPP law would not apply because no party was a resident of California).  Accordingly, California has no interest in resolving a cause of action filed by a Texas resident against a New York resident.  New York, on the other hand, has an interest in its law being applied because Cohen resides there.

Further, anti-SLAPP laws serve to protect the defendant, and thus, the state of the defendant's residence is the only one that has an interest.  See Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1118, 1158–59 (N.D. Cal. 2003) ("California appears to have no governmental interest in having its [anti-SLAPP] law applied" where none of the counterclaim defendants resided in California); Hurtado v. Superior Court, 11 Cal. 3d 574, 581, 522 (1974) ("Mexico has no interest in applying its limitation of damages—Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by non-Mexican defendants.").  On the other hand, New York "has an interest in regulating the conduct of its citizens."  Condit v. Dunne, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004); see also Block v. First Blood Assocs., 691 F. Supp. 685, 698

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

(S.D.N.Y. 1988) (in action transferred from California, court performing governmental interest analysis concluded that New York law would apply on litigation privilege to defamation because "New York has a compelling interest in policing tortious conduct committed in New York, by a New York attorney, with reference to future or pending litigation in New York."); c.f. Reich v. Purcell, 67 Cal. 2d 551, 556 (1967) ("A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile. . ."). Accordingly, California has no interest in applying its anti-SLAPP statute to protect Cohen, a nonresident, while New York has an interest in applying its law because he resides there and presumably performed the conduct that is the focus of this litigation there.

### 3. If California Anti-SLAPP Law Applies, Clifford Must be Afforded an Opportunity for Discovery.

"[I]f a defendant desires to make a special motion to strike based on the plaintiff's lack of evidence, the defendant may not do so until discovery has been developed sufficiently to permit summary judgment under Rule 56." Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999); see also Z.F., 482 F. App'x at 240 (if an anti-SLAPP motion "is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted"). This is because although "Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). "If the motion challenges the factual basis of the plaintiff's case. . . then the application of Rule 56 may require the motion to strike pursuant to section 425.16 be denied as premature." Aeroplate Corp. v. Arch Ins. Co., No. CVF061099AWISMS, 2006 WL 3257487, at *5 (E.D. Cal. Nov. 9, 2006).

Here, because Cohen makes factual challenges in his anti-SLAPP motion, Plaintiff must be afforded an opportunity to conduct discovery. No discovery has occurred in this case and Plaintiff requires discovery so that she may respond to Cohen's motion. In particular, she requires discovery regarding the full extent of the communications between Cohen and Davidson, including obtaining any recordings made by Cohen of the calls between them. In addition, depositions of both Davidson and Cohen will be necessary. This discovery will enable Plaintiff to acquire evidence to prove the aiding and abetting breach of fiduciary duty claim against Cohen as well as respond to the factual assertions (which are unsupported by any declarations or other evidence) Cohen makes as part of his litigation privilege defense. Also, Cohen may argue that the text messages Plaintiff relies on in this motion have not been properly authenticated. The text messages may also be authenticated at a deposition.

### B. Even if California anti-SLAPP Law Does Apply, Cohen's Motion Fails.

The Code of Civil Procedure sets forth a two-prong analysis applicable to anti-SLAPP motions such as the one here. First, "the initial burden rests with the *defendant* to demonstrate that the challenged cause of action arises from protected activity." Brill Media Co., LLC v. TCW Group, Inc.,132 Cal. App. 4th 324, 374 (2005) (emphasis added). That is, the *defendant* must "demonstrate that the challenged cause of action is subject to the special motion to strike procedure." Id. This requires a showing the conduct "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).

Second, if, and only if, a defendant meets this initial burden, then the burden shifts to the plaintiff to prove a probability of prevailing on the merits. Cal. Civ. Proc. Code § 425.16(b). The "probability of prevailing" standard is the same standard governing a motion for summary judgment, nonsuit, or directed verdict—i.e. a plaintiff must make a prima facie showing of facts that would support a judgment in plaintiff's favor. See Taus v. Loftus, 40 Cal.4th 683, 714 (2007).

### 4. Cohen's Activity that Forms the Basis of the Claims Against Him is Not Protected by the Anti-SLAPP Statute or Litigation Privilege.

Cohen argues that California Civil Procedure Code 425.16(e)(2), which covers "written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by a... judicial body" provides the basis for his anti-SLAPP motion. [Dkt. No. 26-1 at 5.]  However, Cohen avoids stating with any specificity what communications he alleges are protected by the anti-SLAPP statute, and what issue before a judicial body was the subject these communications.

"[A]cts falling within the anti-SLAPP statute because of their connection with judicial proceedings do not inevitably fall within the litigation privilege; however, the privilege plainly informs interpretation of the 'arising from' prong of the anti-SLAPP statute." Gallanis-Politis v. Medina, 152 Cal. App. 4th 600, 617 n. 14 (2007). Because the scope of the litigation privilege affirmative defense and anti-SLAPP standard are very similar, with one significant exception noted below, Plaintiff will discuss them together.  Significantly, just as Cohen bears the burden of demonstrating that the anti-SLAPP statute applies to the cause of action against him, he also bears the burden of proving that the litigation privilege applies here. Do v. Hollins Law, P.C., No. 3:13-CV-01322-JSW, 2013 WL 4013659, at *3 (N.D. Cal. Aug. 5, 2013) (defendant has "burden to show the [activity] is protected by the litigation privilege" in an anti-SLAPP motion); Dawe v. Corr. USA, No. CIVS-07-1790 LKK/EFB, 2010 WL 682321, at *9 (E.D. Cal. Feb. 24, 2010) (defendants have "initial burden as to showing that they are entitled to the absolute litigation privilege" in a motion for summary judgment); Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15, 37 (1997).

### a) The Gravamen of the Cause of Action is Aiding and Abetting Breach of Fiduciary Duty.

"[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies, and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause

-10-

of action to the anti-SLAPP statute." Martinez v. Metabolife Internat., Inc., 113 Cal. App. 4th 181, 188 (2003) (emphasis in original) (citation omitted). "[T]he gravamen of an action is the *allegedly wrongful and injury-producing conduct,* not the damage which flows from said conduct." Renewable Res. Coal., Inc. v. Pebble Mines Corp., 218 Cal. App. 4th 384, 387 (2013) (emphasis in original).

"The only means specified in section 425.16 by which a moving defendant can satisfy the ['arising from'] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in" the anti-SLAPP statute. Park v. Bd. of Trustees of California State Univ., 2 Cal. 5th 1057, 1063 (2017) (emphasis in original) (citation omitted). "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by defendant supply those elements and consequently form the basis for liability." Id. Courts must "take care to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." Id. at 1064. "In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity. Prelitigation communications or prior litigation may provide evidentiary support for the complaint without being a basis of liability. An anti-SLAPP motion should be granted if liability is based on speech or petitioning activity itself." Id. at 1065 (emphasis in original). "Accordingly, where a plaintiff's claim attacks only the defendant's decision to undertake a particular act, and if that decision is not itself protected activity, that claim falls outside the ambit of the anti-SLAPP statute." Mission Beverage Co. v. Pabst Brewing Co., LLC, 15 Cal. App. 5th 686, 701 (Ct. App. 2017).

Therefore, even when a claim refers to litigation-related activities, the references to those activities do not trigger anti-SLAPP protection if they are illustrations of the conduct forming the basis for the claim. See Gaynor v. Bulen, 19 Cal. App. 5th 864, 879 (2018). For example, in Gaynor a claim for breach of fiduciary duty against a trustee did not

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

1    trigger the anti-SLAPP statute merely because one example of the breach was that the

2    trustee used trust assets to pay legal fees in a matter pursued for the benefit of the trustee.

3    Id.  That is because "the activity giving rise to the [trust] beneficiaries' alleged harm was

4    the breach of loyalty in formulating and pursuing this plan and the improper use of Trust

5    assets to wrongfully benefit [the trustee] and the Cotrustees."   Id. at 880.  In other words,

6    the Court explained that the "litigation activities [that resulted in fees being incurred]

7    would provide evidence of the alleged breaches of fiduciary duty, but the filing of these

8    petitions were not necessary to establish this portion of the breach of fiduciary duty

9    claim."  Id. (emphasis in original)  "The wrongful conduct that produced [the] injury was

10   not the litigation itself; instead the injury was the result of [the trustee's] formulation and

11   advocacy of the plan to maintain control of the Trust to the detriment of other

12   beneficiaries and the withdrawal of Trust funds for this purpose."   Id. at 881; see also

13   Scott v. Metabolife Internat., Inc., 115 Cal. App. 4th 404, 417 (2004) (allegations

14   regarding advertisements does not make the anti-SLAPP statute applicable because the

15   causes of action are based upon *the act of making a defective product* that caused injury).

16           Here, Plaintiff has identified specific examples where Davidson **breached his**

17   **fiduciary** duty to Clifford with Cohen **aiding and abetting** him in doing so by, among

18   other things, assisting Cohen in arranging for Clifford to appear on television, warning

19   Cohen that Clifford intended to publicly disclose her relationship with Trump, and

20   warning Cohen that Clifford intended to sue Cohen and Trump.  These three specific

21   examples demonstrate that Cohen, while aiding and abetting Davidson's own tortious

22   conduct, inverted Davidson's loyalty so that Davidson pursued the interests of Trump and

23   Cohen rather than his client, Plaintiff.  Therefore, even if these three instances were

24   "speech or petitioning activity" for anti-SLAPP purposes (and they are not) they are "mere

25   *evidence* related to liability."  Park, 2 Cal. 5th at 1065.  The actual tortious conduct that

26   injured Plaintiff is that Davidson, aided and abetted by Cohen, ceased abiding by his duty

27   of loyalty and fiduciary duty to Plaintiff and instead assisted Trump and Cohen even when

28   doing so was contrary to Plaintiff's interests.

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

**b)** **None of the Events that Demonstrate Aiding and Abetting Breach of Fiduciary Duty are Protected Activity.**

Following the publication of Plaintiff's *In Touch Weekly* interview in January 2018, Cohen communicated with Davidson to arrange for Clifford to be on the *Hannity* show. [Dtk. No. 1-1 ¶¶ 16-35.]  That interview occurred in 2011, many years before Plaintiff ever signed the Settlement Agreement, let alone being involved in any litigation with Cohen or Trump.   [Clifford Decl. ¶3.]   Clearly, allegations that Cohen worked with Plaintiff's attorney to arrange media interviews that would benefit Cohen's client Trump, but that Plaintiff never in any way authorized or agreed to, have nothing to do with litigation at all.  Even if this event is itself considered the injury-causing conduct for anti-SLAPP purposes, rather than evidence of the broader breach of fiduciary duty, the anti-SLAPP statute is inapplicable here.    Davidson's breach of his duty of loyalty, and Cohen's aiding and abetting him in doing so, were the activities that resulted in Plaintiff's harm, not litigation that occurred months later.  This instance of misconduct is thus not protected by the anti-SLAPP statute or litigation privilege.  Indeed, Cohen has proffered no evidence to suggest otherwise.

The second instance providing evidence of harm-causing misconduct was when Davidson tipped Cohen off to Plaintiff's plans to disclose her relationship with Trump, and Cohen aided and abetted him in doing so.  [Dkt. No. 1-1 ¶¶ 36-37.]  The third specific instance was when Davidson tipped Cohen off to Plaintiff's plans to sue Trump and Cohen.  [Dkt. No. 1-1 ¶¶ 40-50.]  However, these instances have nothing to do with litigation either.  They are simply additional evidence of Cohen assisting Davidson in violating Davidson's duty of loyalty to Plaintiff.

Renewable Res. Coal, Inc. v. Pebble Mines Corp., is very similar to these latter two situations.  218 Cal. App. 4th 384, 388 (2013).  There, the defendant, a mining company, purchased confidential communications about a nonprofit that was behind a ballot imitative opposing development of defendant's mine.  Id.  The company purchased the information from a professional fundraiser that worked for the nonprofit and then gave it to a government agency as part of a formal complaint against the nonprofit, which resulted

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

1   in the nonprofit incurring expenses defending itself in front of the agency.  Id. at 389.

2   When the nonprofit sued the company for buying the protected information, the company

3   filed an anti-SLAPP motion arguing that it was protected under the statute because the

4   company had used the confidential documents to file the complaint with the government.

5   Id. at 397.  However, the Court recognized the complaint was a red herring and that "the

6   gravamen of the Coalition's action was that the Pebble defendants allegedly wrongfully

7   purchased the Coalition's confidential documents from [the fundraiser] for the sum of

8   $50,000.  Said purchase was not an act by the [company] in furtherance of their right of

9   petition or free speech, making the anti-SLAPP procedure inapplicable."  Id.

10       The same is true here.  Cohen acquired confidential information, including that

11  Plaintiff intended to go public about her relationship with Trump and that she intended to

12  sue Trump and Cohen, from Davidson.  The gravamen of the Complaint is the overall

13  breach of fiduciary duty that resulted in Davidson willingly giving Cohen this confidential

14  information.  What Cohen and Trump did with that information after they acquired it is

15  insignificant.  Plaintiff was harmed by the *disclosure* of the information and Davidson's

16  breach of his duty of loyalty to her, not how the information was subsequently used.

17  Plaintiff would have a cause of action against Davidson and Cohen even if she never

18  ended up in litigation with Cohen and Trump.  Cohen does not argue otherwise.

19           c)      **The Communications Discussed in the Complaint Were Not
                     Made in Anticipation of Litigation**
20

21       Cohen argues that "[c]ommunications with Plaintiff's then council [sic] regarding

22  Clifford   and   the   controversy   surrounding   the   potential   breach   of   contract   are

23  unquestionably in preparation or anticipation of litigation."  [Dkt. No. 26-1 at 5.]  But this

24  statement is conclusory and unsupported by any admissible evidence.[2]  Cohen fails to

25  specify the communications he refers to.  However, as was already stated, the ones

26  identified in the Complaint do not have anything to do with litigation.  Similarly, Cohen

27  _____
    [2] Cohen does cite Davidson's answer at one point [Dkt. No. 26-1 at 1], but he would not

28  be able to have it admitted as evidence.  For example, it is not a statement being offered
    against a party opponent.  See Fed. R. Evid. 801(d)(2).

-14-

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

argues that "[m]erely communicating by text message regarding circumstances that were highly likely to, and did, lead to litigation are without question protected communications."  [Dkt. No. 26-1 at 6.]  However, "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.  Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such.  In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity."  In re Episcopal Church Cases, 45 Cal. 4th at 477 (2009) (citation omitted) (emphasis in original); Clark v. Mazgani, 170 Cal. App. 4th 1281, 1286 (2009) (stating same rule).

Cohen appears to believe that the fact that Plaintiff eventually ended up in litigation with Cohen and Trump means that the anti-SLAPP statute and litigation privilege apply.  However, following the timeline of the events that occurred reveals that none of the activities that provide evidence of Cohen aiding and abetting in Davidson's breach of fiduciary duty could possibly be based on any litigation-related action by Defendant.  As the California Supreme Court has explained, "[t]o be protected by the litigation privilege, a communication must be 'in furtherance of the objects of the litigation.'  This is part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action.  A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration."  Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251 (2007).  "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact."  Id.  "The litigation privilege 'arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute.'"  Haneline Pac. Properties, LLC v. May, 167 Cal. App. 4th 311, 319 (2008) (quoting Edwards v. Centex Real Estate Corp.,

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

53 Cal. App. 4th 15, 39 (1997)).  Therefore, when "the overall tone of the communications is one of persuasion and a desire to cooperate to achieve mutual goals," the anti-SLAPP statute does not apply.  Id.  A defendant cannot simply claim that "[t]he spectre of litigation loomed over the entire course of the parties' communications" because "the same could be said of nearly any high-stakes negotiation."  Id. at 320.

Cohen cannot possibly contend that all communications with Davidson fall under the litigation privilege by virtue of the fact that they were involved in the creation of the Settlement Agreement.   That would require litigation to have been continuously contemplated in good faith and under serious consideration from the date Clifford signed the Settlement Agreement.  That is absurd.  Even if Cohen intended to make such a claim, he would need evidentiary support, and he has provided none.

Moving forward in time to when Cohen wanted Plaintiff to appear on the *Hannity* show, the tone of these communications indicate that Cohen and Davidson were attempting to "cooperate to achieve mutual goals."  Haneline Pac. Properties, LLC 167 Cal. App. 4th at 319.  There is no indication that Cohen or Trump intended to sue Plaintiff.  Cohen claims that "Cohen's communications were aimed at curing and/or mitigating a breach of the Settlement Agreement to avoid future litigation that would very likely stem from such a breach." [Dkt. No. 26-1 at 10.] He fails to explain how this could possibly be true, however.  Cohen does not contend that the publication of the *In Touch Weekly* interview years after Plaintiff spoke to the magazine or Plaintiff failing to appear on the *Hannity* show would somehow expose Plaintiff to liability under the Settlement Agreement.   Therefore, allegations premised on these communications cannot be protected activity under the anti-SLAPP statute or the litigation privilege.  If Cohen intended to argue otherwise, he should have submitted evidence.

Communications between Davidson and Cohen in which Davidson warned Cohen that Plaintiff intended to publicly disclose her relationship with Trump would not be protected by the litigation privilege or anti-SLAPP law, either.  At that point, there is no evidence that Cohen or Trump were somehow already aware of this information.  If

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

Cohen and Trump were unaware of Plaintiff's plan, Cohen could not have been communicating with Davidson in anticipation of litigation against Plaintiff because of her planned public disclosure.   Cohen's argument would thus apparently have him communicating with Davidson in anticipation of something he was not yet aware of. There would be no plausible reason why someone might sue Plaintiff at that point.   In addition, while Cohen implies that Davidson represented Plaintiff throughout the period Davidson communicated with him [Dkt. No. 26-1 at 6], this is untrue.   [Clifford Decl. ¶6.]

Similarly, communications about Plaintiff's intention to sue Cohen and Trump could not have occurred in anticipation of the actual lawsuit, because that would require them to already be aware of the lawsuit (which Cohen does not claim) and because Davidson no longer represented her.   Nor can Cohen claim that these were communications related to the lawsuit because arbitration proceedings are outside the scope of the anti-SLAPP statute.   "Arbitration is not a judicial proceeding—it is an alternative thereto." Century 21 Chamberlain & Assocs. v. Haberman, 173 Cal. App. 4th 1, 8 (2009).  Nor is "arbitration an official proceeding authorized by law, subject to anti-SLAPP protection.   When nongovernmental entities are involved, courts have limited official proceeding anti-SLAPP protection to (1) quasi-judicial proceedings that are part of a comprehensive statutory licensing scheme and subject to judicial review by administrative mandate." Id. at 9 (citations and quotations omitted).   Therefore, a defendant cannot argue that a cause of action is subject to an anti-SLAPP motion because of its connection to arbitration. Id. at 10.  Significantly, this would be true even if the defendant could assert a litigation privilege defense, because this is one of the areas where the scope of the litigation privilege and the anti-SLAPP statute differ. Century 21 Chamberlain & Assocs., 173 Cal. App. 4th at 10.

### 5.    Plaintiff's Claims are Meritorious.

Cohen's primary merits argument is premised on the litigation privilege.  [Dkt. No. 26-1 at 8-10.]  As was already explained above, that argument fails.  Cohen also repeats the personal jurisdiction arguments that he made in the Rule 12(b)(2) motion filed less

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

1   than a week before he filed this motion.   Plaintiff does not wish to waste the Court's time

2   by repeating her opposition to that motion and therefore incorporates it by reference here.

3        Cohen makes two additional conclusory arguments.   First, he argues that "Plaintiff

4   fails to provide evidentiary support for her allegations of conspiracy or aiding and

5   abetting." [Dkt. No. 26-1 at 15.]  It is unclear why Cohen believes Plaintiff was required

6   to provide admissible evidence one month after the Complaint was filed.  As was stated

7   above, discovery has not commenced and Plaintiff intends to make full use of the

8   discovery tools available to her to obtain evidence relevant to her claims against Cohen

9   and Davidson.  If "Plaintiff's allegations are a product of complete invention," as Cohen

10  contends, it is unclear why he fails to submit a declaration denying that he aided and

11  abetted Cohen and explaining how their communications were in fact completely

12  appropriate.  [Id.]  Cohen criticizes Plaintiff's use of information and belief allegations,

13  but "[t]he Twombly plausibility standard ... does not prevent a plaintiff from pleading

14  facts  alleged  upon information and belief where  the  facts  are  peculiarly  within  the

15  possession and control of the defendant or where the belief is based on factual information

16  that makes the inference of culpability plausible." Soo Park v. Thompson, 851 F.3d 910,

17  928 (9th Cir. 2017) (permitting information and belief pleading to allege conspiracy).

18       Here, evidence of Cohen aiding and abetting Davidson is peculiarly within the two

19  defendants' possession and control.   The text messages Plaintiff has obtained from

20  Davidson thus far are sufficiently probative to enable her to plausibly allege that Cohen

21  aided and abetted Davidson.  They demonstrate that the two communicated regularly

22  about matters Plaintiff had never authorized Davidson to communicate about.  In addition,

23  unless Cohen and Davidson were in fact working together, it is inexplicable that Davidson

24  would contact Cohen shortly after he was fired and before Plaintiff sued Cohen and

25  Trump.  Even stranger, it makes no sense why Cohen and Rosen, one of the attorneys who

26  initiated the arbitration proceeding against Clifford, included Davidson on a conference

27  call unless they expected Davidson to share confidential information with them.  A former

28  attorney would not have anything else to offer on such a call.  Davidson sharing his

-18-

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**

confidential information with Cohen in breach of his fiduciary duty to Plaintiff is not merely one plausible explanation; it is the *only* plausible explanation.

Finally, Plaintiff is entitled to damages. "California law permits asserting a breach of fiduciary duty claim even when the damages are nominal." <u>Sorensen v. New Koosharem</u>, No. CV1501088RGKPJWX, 2016 WL 4925917, at *7 (C.D. Cal. Mar. 2, 2016); <u>see</u> <u>also</u> Cal. Civ. Code § 3360. Accordingly, there is no basis to conclude Plaintiff has suffered no damage. At a minimum, she will receive nominal damages.

Plaintiff also seeks attorneys' fees as damages, which are recoverable by virtue of Cohen's aiding and abetting the forcing of Plaintiff into litigation with Davidson. <u>See</u> <u>Lee v. W. Coast Life Ins.</u>, 688 F.3d 1004, 1008 (9th Cir. 2012) ("Under California law, it is a well-established principle that attorney['s] fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages."). Further, to the extent that information that Cohen obtained from Davidson prompted the arbitration proceeding to be initiated against Plaintiff, which in turn required Plaintiff to sue Cohen and Trump, Plaintiff is entitled to attorneys' fees in those two actions as well. Finally, Plaintiff also seeks punitive damages. [Dkt. No. 1-1 at ¶82.]

The two cases Cohen cites are irrelevant. <u>Noble v. Sears, Roebuck & Co.</u> merely holds that a violation of the Rules of Professional Conduct is not a stand-alone tort that creates liability for damages. <u>See</u> 33 Cal. App. 3d 654, 658 (1973). <u>Mirabito v. Liccardo</u> simply holds that the Rules of Professional Conduct are relevant to the duties of an attorney and therefore a breach of fiduciary duty claim. 4 Cal. App. 4th 41, 46 (1992). Here, Plaintiff has alleged aiding and abetting breach of fiduciary duty against Cohen, not a stand-alone tort specific to violation of the Rules. Cohen's cases do not preclude an award of damages here.

### C. If the Court Makes a Ruling Based on Rule 12(b)(6), the Litigation Privilege Defense is Unavailable to Cohen.

As noted above, Cohen's primary merits argument in his motion is that the litigation privilege defense applies. However, "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing

-19-

1   relief on the face of the complaint." ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999,

2   1004 (9th Cir. 2014).  Cohen's litigation privilege argument heavily relies on facts that are

3   outside the Complaint (and unsupported by any declaration), such as that "Cohen's

4   communications were aimed at curing and/or mitigating a breach of the Settlement

5   Agreement."  [Dkt. No. 26-1 at 10.]    The Court therefore may not consider Cohen's

6   litigation privilege argument on a 12(b)(6) motion.

7       **D.  If Cohen's Motion is Granted, the Court Should Grant Leave to Amend.**

8       In the event the Court grants Cohen's motion, it should do so with leave to amend.

9   This remains true even if the Court determines that California's anti-SLAPP law applies.

10  The Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a

11  plaintiff's initial complaint without granting the plaintiff leave to amend would directly

12  collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  Verizon

13  Delaware, Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004).  Clifford

14  has only filed one complaint in this action (drafted to be in conformance with state, rather

15  than federal pleading standards) and she should be permitted to cure any deficiencies in

16  her claim against Cohen through amendment.

17  **IV.  CONCLUSION**

18      For the reasons stated above, Plaintiff respectfully requests that Cohen's motion be

19  denied in its entirety.  In the alternative, if the Court determines that California's anti-

20  SLAPP law applies, Plaintiff requests that Cohen's motion be denied without prejudice so

21  that Plaintiff may have an opportunity to conduct discovery.  In the event that the Court

22  grants Cohen's motion in any respect, Plaintiff requests leave to amend her Complaint.

23  DATED:  July 16, 2018          AVENATTI & ASSOCIATES, APC

24

25

26            /s/ Michael J. Avenatti

27            MICHAEL J. AVENATTI
              Attorneys for Plaintiff

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT MICHAEL COHEN'S MOTION TO STRIKE**